[669 NYS2d 651]

FRANKLIN GLATTER et al., Appellants, v CHASE MANHATTAN BANK, as Successor in Interest to CHEMICAL BANK, et al., Respondents.

Second Department, March 2, 1998

**APPEARANCES OF COUNSEL**

*Horowitz & Feinberg,* West Hempstead *(Matthew Feinberg* of counsel), for appellants.

*Michael A. Pearce,* New York City, for respondents.

**OPINION OF THE COURT**

FRIEDMANN, J.

On this appeal, we are asked to determine whether a mortgagor may sue a mortgagee for punitive damages under RPAPL 1921 (4) when, in violation of that provision as amended in 1993 (L 1993, ch 132, § 2), the mortgagee fails to supply a satisfaction of mortgage within 90 days of its discharge and demand by the mortgagor.

The instant action arises out of a revolving creditline agreement entered into by the plaintiffs, Franklin Glatter and Bette Ann Glatter, and the defendants, Chase Manhattan Bank, as successor in interest to Chemical Bank, and Chase Financial Corporation (hereinafter collectively referred to as the bank) in November 1994. Simultaneously with their execution of a Quick Creditline Promissory Note and Revolving Credit Agreement, the plaintiffs executed an "Open End Mortgage" in favor of the bank in the amount of $50,000, secured by their single-family residence in Oceanside, New York, which was recorded in the office of the Nassau County Clerk in December 1994.

The defendants do not contest that in May 1996, the plaintiffs discharged their loan in full. They also do not dispute that the plaintiff Franklin Glatter visited the bank's Rockville Centre branch office and consulted with one of its employees in May, June, July, and August 1996, requesting that the bank remove the cloud upon the title to his home by issuing him a formal "satisfaction of mortgage" pursuant to paragraph 26 of the parties' credit agreement. According to Mr. Glatter, on

these occasions the bank's employee first explained that the obtaining of a satisfaction of mortgage from the bank's central office in Cleveland, Ohio, would "take time"; then indicated that the bank could not find the mortgage papers; then advised him that his request could not be processed without a letter formally seeking termination of the line of credit; and finally conceded that the bank "had lost the mortgage".

At length, on September 13, 1996, pursuant to the bank's instructions, the plaintiffs wrote a letter asking it to close out the plaintiffs' Creditline account and to issue the plaintiffs "a satisfaction of mortgage" that had been filed in the office of the Nassau County Clerk. The bank thereafter informed the plaintiffs that the mortgage had never been recorded; that a letter from the bank reflecting a balance of zero in the plaintiffs' account was just as good as a satisfaction of mortgage; and that the bank was not obliged to and therefore refused to issue an official "satisfaction of mortgage" to the Glatters. In October of 1996, the bank returned the plaintiffs' original note marked "Paid in Full", but still failed to produce a satisfaction of mortgage. In December 1996, the plaintiffs retained an attorney, who sent the defendants a blank satisfaction of mortgage form under cover of a letter asking that the defendants merely fill it out; but the bank never responded to this request.

In February 1997 the plaintiffs commenced this action seeking, *inter alia,* punitive as well as statutory damages and attorney's fees stemming from the bank's failure to issue a satisfaction of mortgage within 90 days, in violation of RPAPL 1921 (4). In March 1997, after this lawsuit was commenced, the bank sent the plaintiffs a satisfaction of mortgage, and, conceding that more than 90 days had elapsed since the plaintiffs' initial request for this document, offered to pay them $500 in accordance with the terms of the statute.

When the plaintiffs refused to discontinue their lawsuit, the bank moved to dismiss pursuant to CPLR 3211, alleging, in substance, that the plaintiffs were limited to the $500 penalty provided by RPAPL 1921 (4). By decision dated May 19, 1997, the court reviewed the legislative history surrounding the enactment of RPAPL 1921, and directed entry of a judgment limiting the plaintiffs' award to $500. We now affirm the judgment entered upon that decision.

Where the Legislature creates a new statutory cause of action not previously cognizable at common law, the courts must look to the statute "to determine whether punitive damages

are legally permissible * * * not to whether the nature of the wrong alleged would permit recovery under traditional concepts of punitive damages in tort law" *(Thoreson v Penthouse Intl.,* 80 NY2d 490, 496; *Home Ins. Co. v American Home Prods. Corp.,* 75 NY2d 196, 203-204). Thus, the novel issue presented here is whether the Legislature intended that an aggrieved person be permitted to recover punitive damages under RPAPL 1921 (4).

In searching for the legislative intent, the words of the statute must be examined both for their meaning as used in the specific section where they appear, and in their context as part of the statutory scheme *(see, Thoreson v Penthouse Intl., supra,* at 496; *Price v Price,* 69 NY2d 8, 13).

RPAPL 1921 (4) reads as follows: "In the case of a mortgage secured by property improved by a one-to-six family, owner occupied, residential structure * * * if the mortgagee fails within ninety days to deliver the satisfaction of mortgage and/or fails within ninety days to deliver the note and the mortgage and any other documents as required by subdivision one of this section and if the mortgage is not otherwise satisfied the mortgagee shall be liable to such person in the amount of five hundred dollars or the economic loss to such person, whichever is greater * * * Damages imposed by this subdivision shall be in addition to the other costs and fees allowed in this section".

Other passages pertinent to a proper interpretation of this subdivision include the provision in RPAPL 1921 (5) that if a bank does not supply a satisfaction of mortgage within 90 days after the debt has been paid and the satisfaction requested, the homeowner's attorney may, upon payment of a $50 fee, file an affidavit with the County Clerk's office indicating that the lien has been satisfied. Such a filing would serve the same purpose as a satisfaction of mortgage. In addition, according to RPAPL 1921 (2), should time be a factor, the homeowner need not wait 90 days but may file his affidavit immediately upon discharging his loan, by means of an order to show cause.

On their face, the foregoing provisions establish that the Legislature did not intend to allow an aggrieved person to recover punitive damages in a court action based upon RPAPL 1921 (4). The text of RPAPL 1921 (4) makes no reference to punitive damages, providing only that a homeowner may recover the greater of $500 or his economic loss.

This conclusion is borne out by the relevant statutory history. RPAPL 1921 (4) (as amended by L 1993, ch 132, § 2), was enacted to compensate homeowners for any economic damage

they might suffer from a mortgagee's dilatoriness in issuing a satisfaction of mortgage, rather than to punish the offending mortgagee *(see, e.g., Thoreson v Penthouse Intl., supra,* at 497). Accordingly, two supporters of the 1993 legislation noted in a memorandum supporting the enactment that its purpose was "to encourage mortgagees to provide documents required to close residential real estate transactions and to clear titles to residential real estate in a timely fashion [as well as] to address existing abuses in the mortgage lending industry" (Mem in Support of Assemblyman Robach and Sen. Johnson, Bill Jacket, L 1993, ch 132). In addition, the following justification for the new law was offered by the same proponents:

"The existing law imposes no time frames or penalties for the failure to deliver mortgage payoff statements, title documents and mortgage discharges after requests by the sellers of residential real property or their attorneys. Over the past few years, with mortgage lenders increasingly located away from the communities where the real property securing the mortgage is located, abuses have become rampant in regard to furnishing documents to allow timely closings and clearing of the title to residential real property. Discharges of mortgages are routinely delivered many months after the final payment has been made to the mortgage lender, and in some cases are delayed for more than a year. Title companies have worked with the new buyers and lenders to provide clear title reports in spite of these open mortgages. There is a real possibility, however, that a large loss by a title company as a result of this practice may bring the whole system for transferring residential property in this state grinding to a halt.

"Other states have enacted more stringent sanctions for mortgage lenders and servicers which fail to provide documents related to the transfer of real property titles than those set forth in this bill. This bill does, however, provide serious penalties to mortgage lenders who fail to provide the necessary documents within the reasonable time frames set forth in this bill" (Mem in Support of Assemblyman Robach and Sen. Johnson, Bill Jacket, L 1993, ch 132).

As the foregoing makes clear, the legislation was intended to encourage mortgage holders to return discharge-of-mortgage and other mortgage-related documents to the borrower or his counsel in a timely manner upon discharge of the debt. The penalties provided for in the statute were viewed as a sufficient and reasonable sanction for the mortgagee's failure to conform to the statutory timetable.

Since the recovery of punitive damages would be inconsistent with the intent of the Legislature, as expressed in both the statutory scheme and the legislative history, we conclude that the court properly dismissed the plaintiffs' demands for punitive damages. As the plaintiffs have failed to produce evidence of actual economic loss, their recovery against the bank is limited to the $500 that the defendants have offered.

We also agree with the Supreme Court that the plaintiffs were not entitled to an award of attorney's fees absent an agreement between the parties, statutory authorization, or court rule *(see, Hooper Assocs. v AGS Computers,* 74 NY2d 487, 491-492). In addition, that branch of the plaintiffs' second cause of action seeking punitive damages on the ground that the bank's acts were "willful, deliberate and malicious" was properly dismissed because there can be no separate cause of action to recover punitive damages *(see, e.g., Rocanova v Equitable Life Assur. Socy.,* 83 NY2d 603, 616; *Hubbell v Trans World Life Ins. Co.,* 50 NY2d 899, 901; *Ruddy v Citibank,* 224 AD2d 509, 510; *Van Caloen v Poglinco,* 214 AD2d 555, 557). The Supreme Court was also correct in ruling that the bank's behavior, albeit reprehensible, did not rise to the level of extreme and outrageous conduct, so transcending the bounds of decency as to be intolerable in a civilized society, such that it would support a claim for intentional infliction of emotional distress *(see, Howell v New York Post Co.,* 81 NY2d 115, 122-123; *Murphy v American Home Prods. Corp.,* 58 NY2d 293, 303; *Vasilopoulos v Romano,* 228 AD2d 669, 671).

Accordingly, the judgment is affirmed, insofar as appealed from.

O'BRIEN, J. P., SULLIVAN and GOLDSTEIN, JJ., concur.

Ordered that the judgment is affirmed, insofar as appealed from, without costs or disbursements.