2008 ME 19

David CURRIER

v.

Tamber HURON.

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 27, 2007.

Decided: Jan. 29, 2008.

David J. Bobrow, Esq., Bedard & Bobrow, PC, Eliot, ME, for David Currier.

Gregory J. Orso, Esq., Erwin, Ott, Clark, Orso & Campbell, York, ME, for Tamber Huron.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, SILVER, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] David Currier appeals from a judgment of the Superior Court (York County, *Brennan, J.*) granting his motion for summary judgment and awarding him $1800 in exemplary damages and $2479.63 in attorney fees, pursuant to 33 M.R.S. § 551 (2007), for Tamber Huron's delayed discharge of a mortgage. Currier asserts that the court erred in not awarding him $5000, the maximum amount permitted by section 551, because Huron failed to discharge the mortgage for more than 200 weeks after discharge should have occurred.

[¶ 2] Tamber Huron cross-appeals arguing that (1) the court erred in awarding the $1800 in damages because Currier failed to prove that he faithfully performed the terms and conditions of the note and mortgage; and (2) if the Superior Court properly found Currier fully performed, then the award of $1800 was appropriate because the amount of the award is within the discretion of the trial court.

[¶ 3] Because the exemplary damage amount set by 33 M.R.S. § 551 is not discretionary and the criteria for assessment of exemplary damages are met, we vacate and remand the damages award for recalculation in accordance with the statute. In all other respects, we affirm.[1]

---

1. The issue raised in Tamber Huron's cross-appeal does not merit separate discussion.

## I. CASE HISTORY

[¶ 4] The essential facts of this case are not in dispute. Currier and Huron were involved in a romantic relationship and lived at Currier's home. On December 20, 2001, Huron loaned Currier $24,000, secured by a mortgage on Currier's home. The loan was to be paid in six months.

[¶ 5] On March 8, 2002, Currier refinanced his home and paid the mortgage in full, as part of the closing on the refinancing. Huron deposited the proceeds from the payoff of the mortgage into her bank account on March 13, 2002. No discharge of the mortgage was recorded within the sixty days as required by 33 M.R.S. § 551.[2]

[¶ 6] Currier and Huron ended their relationship in December 2005. On May 17, 2006, Huron's attorney wrote a letter to Currier demanding payment of the mortgage and threatening foreclosure if payment was not forthcoming. The next day Currier, through counsel, sent a letter asserting the mortgage had been paid in 2002 and demanding that the mortgage be discharged. Included with the letter was a copy of the refinancing settlement statement and the bank statement showing deposit of the $24,000 proceeds from the payoff to Huron's account.

[¶ 7] Despite the documentation of payoff of the mortgage, Huron refused to discharge the mortgage. Currier was required to file this action on June 23, 2006, to secure discharge. Even after this suit was filed, Huron refused, at first, to discharge the mortgage.

[¶ 8] Huron admits that Currier presented documentation of payment of the mortgage, but asserts that she did not know the source or veracity of the documents. She claims that she wanted to ensure the documents, including her own bank deposit statement, were correct prior to discharging the mortgage. She further asserts that she worked with "due diligence" to review the documents and respond. Huron also claims that there was a fact in dispute regarding whether Currier fully complied with the terms of the note and mortgage. She alleges Currier did not pay taxes on the property or provide insurance coverage in Huron's name during the eleven weeks the mortgage was in effect. Huron's claims to justify not discharging the mortgage promptly are frivolous considering her threat to foreclose and the undisputed facts in this record.

[¶ 9] Huron finally discharged the mortgage on July 28, 2006, nine weeks after Currier's attorney sent the letter demanding discharge of the mortgage and over 200 weeks after discharge was required to avoid the penalties specified in 33 M.R.S. § 551.

2. The relevant portion of 33 M.R.S. § 551 (2007) requires that:

Within 60 days after full performance of the conditions of the mortgage, the mortgagee shall record a valid and complete release of mortgage together with any instrument of assignment necessary to establish the mortgagee's record ownership of the mortgage. As used in this paragraph, the term "mortgagee" means both the owner of the mortgage at the time it is satisfied and any servicer who receives the final payment satisfying the debt. If a release is not transmitted to the registry of deeds within 60 days, the owner and any such servicer are jointly and severally liable to an aggrieved party for damages equal to exemplary damages of $200 per week after expiration of the 60 days, up to an aggregate maximum of $5,000 for all aggrieved parties or the actual loss sustained by the aggrieved party, whichever is greater. If multiple aggrieved parties seek exemplary damages, the court shall equitably allocate the maximum amount. The mortgagee is also liable for court costs and reasonable attorney's fees in any successful action to enforce the liability. The mortgagee may charge the mortgagor for any recording fees incurred in recording the release of mortgage.

[¶ 10] The litigation continued after the mortgage was discharged. Currier filed a motion for summary judgment in September 2006. Huron opposed the motion. The motion was heard in March 2007.

[¶ 11] After the hearing, the court granted Currier's motion for summary judgment as to Currier's complaint alleging that Huron violated 33 M.R.S. § 551, and awarded Currier $1800 in exemplary damages and $2479.63 in attorney fees. The court dismissed all other counts, with prejudice, as requested by Currier, based on its granting of Currier's summary judgment motion. Currier filed this timely appeal and Huron filed a timely cross-appeal.

## II.  LEGAL ANALYSIS

[¶ 12] Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by subdivision (h) show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). A material fact is one that can affect the outcome of the case. *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504, 507. A genuine issue of material fact exists when the fact-finder must "choose between competing versions of the truth." *Id.*

[¶ 13] There is no dispute that the $24,000 mortgage was paid in March 2002 and that Huron did not discharge the

mortgage until July 2006. The only issue on this appeal is whether the trial court erred, as a matter of law, in not awarding Currier the statutory specified exemplary damages of $200 per week, up to the $5000 cap set in 33 M.R.S. § 551.[3]

[¶ 14] Whether a court has properly interpreted a statute is a question of law that we review de novo. *State v. Thongsavanh*, 2007 ME 20, ¶ 27, 915 A.2d 421, 427. The "primary purpose in statutory interpretation is to give effect to the intent of the Legislature." *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. If the language is clear and unambiguous, the plain meaning of the statute is addressed, without looking to the legislative history. *Ashe v. Enterprise Rent–A–Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159.

[¶ 15] The language of section 551 is clear and unambiguous. It states that failure to discharge the mortgage makes the mortgagee liable "for damages equal to exemplary damages of $200 per week after expiration of the 60 days," or actual damages, whichever is greater. 33 M.R.S. § 551. We have held statutes using similar language to be mandatory, rather than discretionary.[4] The "up to an aggregate maximum of $5,000" provides a statutory cap on the damages to be awarded if no actual damages were incurred, not a discretionary range. Given that Currier presented no evidence of actual damages, he is entitled to exemplary damages of $200 per week running from the expiration of the sixty days. Because Currier's statuto-

---

**3.** The $5000 cap in section 551 is reached after a mortgage has not been discharged for twenty-five weeks after the required time for discharge. Discharge in this case was delayed for over 200 weeks.

**4.** In *Robbins v. Foley*, 469 A.2d 840, 842 (Me. 1983), we held the language of 14 M.R.S.A. § 6034(2) (1980) stating "this chapter shall

render a landlord liable" mandatory because the "shall" was modified by the purpose of the statute. Likewise, in *Winslow v. Merrifield*, 538 A.2d 283, 284 (Me.1988) and *Dillingham v. Ryan*, 651 A.2d 833, 837 (Me.1994), we held the language "the defendant is liable," in 14 M.R.S.A. § 7552(Supp.1987) and 14 M.R.S.A. § 7552 (Supp.1993), respectively, to be mandatory.

ry damages for the 200 plus weeks Huron failed to discharge the mortgage after the expiration of the sixty days far exceeds the $5000 statutory cap, Currier is entitled to $5000.

[¶ 16] The Superior Court may have determined that Currier was not entitled to damages until after he demanded Huron discharge the mortgage. If the court used the date of Currier's letter demanding discharge of the mortgage as the date upon which discharge was required, then the $1800 would be a correct calculation from the time of demand until actual discharge, on July 28, 2006, nine weeks later.

[¶ 17] The statute does not require that the mortgagor make a demand for discharge or that the mortgagee does not become liable for statutory damages until after such a demand is made. Instead, section 551 states that the mortgagee becomes liable if she fails to discharge the mortgage within sixty days of full performance. It is the duty of the mortgagee, not the mortgagor, to discharge the mortgage upon performance, as indicated in the mortgage itself and THE RESTATEMENT (THIRD) OF PROPERTY, MORTGAGES § 6.4 (1996).[5]

[¶ 18] The mortgagor is not required to do anything to become eligible for damages, as evidenced by the title of the Act which created this statute, "An Act to Require the Holder or Servicer of a Mortgage to Record the Discharge within 60 Days." Comm. Amend. A to L.D. 1586, No. H–382 (119th Legis.1999). To require

demand prior to discharge would permit mortgagees to refuse to discharge the mortgage for months or years, as was the case here, and then avoid any damages by promptly discharging the mortgage when a demand is made or suit is filed.

[¶ 19] Tying the damages obligation to a request for discharge is inconsistent with the letter of the law and the Legislature's purpose. In 1999 the Legislature amended section 551, removing language that stated "[i]f a mortgagee ... after full performance of the condition of his mortgage ..., refuses or neglects for 7 days *after being thereto requested* to make such discharge ..., he shall be punished by a fine of not less than $10 nor more than $50." [6] P.L. 1999, ch. 230, §§ 1, 2 amending 33 M.R.S.A. § 551 (1988) (emphasis added). In its place the Legislature adopted the language of section 551 that is applicable here. Thus, the Legislature removed the "request" requirement intentionally, and with it removed the need for the mortgagor to make a demand in order to become eligible for damages. Additionally, the new language states that the mortgagee becomes liable at the expiration of the sixty days, not upon request for discharge, as the previous statute did. Therefore, Huron became liable for the statutory damages sixty days after payment was made on March 8, 2002, not upon Currier's demand on May 18, 2006.

[¶ 20] The removal of the damages range, "not less than $10 nor more than $50," and the replacement of that language

---

**5.** Huron asserts that she believed Currier was recording the "appropriate documents," in response to Currier's contention that Huron not only failed to discharge the mortgage, but also threatened to foreclose. The mortgage itself states that it is the responsibility of the mortgagee, Huron, to discharge the mortgage, as does Maine law and the RESTATEMENT (THIRD) OF PROPERTY, MORTGAGES. *See* 33 M.R.S. § 551; *see also* RESTATEMENT (THIRD) OF PROPERTY, MORTGAGES § 6.4.

**6.** In the initial drafting of the amended version of this statute the Legislature retained the "fails to remit this amount within 7 days of demand" language. 33 M.R.S.A. § 551 *amended by* P.L. 1977, ch. 100, §§ 1, 2. This language, however, was removed in the final version of the statute. 33 M.R.S. § 551(2007).

with a set "$200 per week after expiration of the 60 days, up to the aggregate maximum of $5,000," indicates the mandatory nature intended by the Legislature. The statute does not say "no less than $200 per week nor more than $5000 total." Instead, it says the mortgagor is entitled to $200 per week. This amendment removed the court's discretion in setting damages, and instead provided mortgagors with mandatory exemplary damages of $200 per week, subject to an aggregated maximum of $5000. The $5000 cap prevents mortgagors, who suffer no actual damages, from obtaining a windfall, by failing to bring suit to force discharge for many weeks, and then seeking the mandatory $200 per week.

[¶ 21] Similar statutes have been enacted in other states, where the legislative history is more specific as to these concerns. Mortgages have become a national enterprise, corresponding with this national expansion; there has been a proliferation of mortgagees failing to timely discharge mortgages. The statutes have been enacted, or amended, in order to ensure timely discharges. *See Glatter v. Chase Manhattan Bank*, 239 A.D.2d 68, 72, 669 N.Y.S.2d 651 (N.Y.App.Div.1998) (revealing purpose was "to encourage mortgagees to provide documents required to close residential real estate transactions and to clear titles to residential real estate in a timely fashion [as well as] to address existing abuses in the mortgage lending industry"). Stiffer penalties, with set time frames, were enacted to encourage timely discharge. *Id.* The New York Legislature noted other states were doing the same,

some with even stiffer penalties. *Id.* Some states maintained the demand requirement.[7] Maine opted to remove the "request" or "demand" language from its statute.

[¶ 22] Currier was entitled to damages beginning sixty days after he paid the mortgage in full. Huron's failure to discharge the mortgage within those sixty days made her liable to Currier for statutory damages of $200 per week up to the maximum $5000. The $1800 award by the Superior Court was an error of law and the case must be remanded in order to correct this error.

[¶ 23] Currier also asks us to remand this action in order to allow the Superior Court to award him attorney fees for this appeal to which he is entitled by section 551.

The entry is:

Judgment vacated. Remanded to the Superior Court to amend the amount of exemplary damages to the $5000 amount set by 33 M.R.S. § 551, and to award reasonable attorney fees for this appeal.

**7.** *See* 27 V.S.A. § 464 (2007) (providing damages in the amount of $25 per day up to aggregate amount of $5000 if not discharged within five days of request); Conn. Gen.Stat. § 49–8 (2007) (providing damages in the amount of $200 per week up to aggregate amount of $5000 if not discharged within sixty days of request); M.C.L. § 565.44 (2007) (providing $1000 in damages if mortgagee fails to discharge after requested); R.I. Gen. Laws § 34–26–5 (2007) (requiring mortgagor request discharge, and if mortgagee fails to discharge within ten days of request, mortgagee is liable for $50 the first day and $5 each additional day).