JABAR, J.,
with whom ALEXANDER, J., joins, dissenting.
[¶ 14] I respectfully dissent because the copy of the recorded instrument sent to the mortgagor accomplishes the intended purpose of the statute. I agree with the *290 Court when it states that “we interpret [statutory] provisions according to their unambiguous meaning unless the result is illogical or absurd.” This is a case where interpreting a statute according to its unambiguous meaning leads to an absurd result.
[¶ 15] We- have noted:
In determining the legislative intent, we look first to the plain meaning of the statutory language, and we construe that language to avoid absurd, illogical or inconsistent results. In addition to examining the plain language we also consider the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved.
Jordan v. Sears, Roebuck & Co., 651 A.2d 358, 360 (Me.1994) (citations omitted) (quotation marks omitted); see also Sunshine v. Brett, 2014 ME 146, ¶ 13, 106 A.3d 1123.
[¶ 16] Although I believe that the language of the statute is unambiguous, we must construe the language in such a way as to avoid “absurd and illogical” results. The main purpose of Title 33 M.R.S. § 551 is to ensure that mortgagees file discharges with the registry immediately following a mortgagor’s payment of the mortgage, and notify the mortgagor that the discharge was filed. Section 551 was enacted to address the problem associated with banks failing to record discharges when mortgagors pay off a note and the accompanying mortgage. In Currier v. Huron, 2008 ME 19, ¶ 21, 940 A.2d 1085, we stated that the purpose of section 551 is to “ensure timely discharges,” because “[m]ort-gages have become a national enterprise ... [and] with this national expansion!,] there has been a proliferation of mortgagees failing to timely file discharge mortgages.”
[¶ 17] The failure of mortgagees to record these discharges creates problems for mortgagors when they later attempt to convey or encumber their property. In response to these problems, legislatures have enacted statutes providing for penalties to encourage mortgagors to promptly file these discharges. The requirement that the mortgagee send the mortgagor evidence of such recordings is not to give the mortgagor any type of valuable document; rather it is to force mortgagees like JPMorgan Chase to promptly record discharges and to inform the mortgagor that the discharge has indeed been recorded. The written document sent to the mortgagor — whether a release deed or another instrument meeting the statutory requirements — has no inherent-value-other than to show that the discharge has been recorded in the registry of deeds.[7] Sending a photocopy of the discharge performs the same function as does sending the original.
[¶ 18] In holding that section 551 requires mortgagees to provide mortgagors with the original release instrument, the Court places much emphasis on the term “the release.” There is no special significance to the use of the term “release” in the statute. The caption to 551 reads: “Entry on record; neglect to discharge.” The text of section 551 does not use the terms “original” or “copy.” Furthermore, the first paragraph of section 551 uses the term “written instrument,” but later in the section the term “release” is used. The statute also provides that although the instrument filed by the mortgagee need not be a deed of release; once it has been properly recorded it has the same effect as *291 a deed of release. Id. However we characterize the recorded document, its requirements are clear: it must contain the name or identity of the mortgagee and the mortgagor and their successors in interest in addition to.the record location, of the mortgage discharged. Id. That the statute does not clearly specify what type of instrument must be recorded is further proof that the purpose of section 551 is to facilitate recording with the registry, and to require mortgagees to promptly inform the mortgagor that the release was recorded.
[¶ 19] The Court has interpreted the language of section 551 according to its unambiguous meaning, but I believe the result is illogical or absurd. Penalizing a bank $500 per violation for noncompliance with the statute, when the bank accomplishes the purpose of the statute — recording the discharge with the registry and sending a photocopy of the discharging instrument to the mortgagor — does not make sense. The mortgagor is put in exactly the same legal position by receiving a photocopy of the instrument as she or he would have been had she or he received the original written instrument.
[¶ 20] It does not make any difference whether the statute is characterized as penal or remedial: we must apply common sense when we interpret it. And it does not make sense — or, stated differently, it would be “illogical and absurd” — to penalize the bank $500 for supplying 'the required information to the mortgagor by sending a photocopy of the discharging instrument.
[¶ 21] For these reasons, I would affirm.

. The filing of the discharge with the registry of deeds is what affords the mortgagor title protection. Title 16 M.R.S. § 453 (2015) provides that properly attested copies of documents filed in the registry of deeds may be used in evidence.