NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2360
_____

In re: WASHINGTON MUTUAL INC. et al, Debtors

NADIA YOUKELSONE,
                                        Appellant

v.

WASHINGTON MUTUAL, INC
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-10-cv-00847)
District Judge:  Hon. Gregory M. Sleet
_____

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2018

Before:  JORDAN, VANASKIE, and RENDELL, *Circuit Judges*

(Filed: September 25, 2018)
_____

OPINION*
_____

_____

      * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Nadia Youkelsone appeals from the District Court's order affirming the Bankruptcy Court's dismissal of her adversary complaint against Washington Mutual, Inc. ("WMI"). For the reasons that follow, we will affirm.

## I.     BACKGROUND[1]

WMI was a savings and loan holding company incorporated under the laws of the State of Washington. WMI's primary asset was Washington Mutual Bank ("the Bank"), its subsidiary. In September 2008, WMI filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. In January the next year, Youkelsone, acting pro se,[2] initiated an adversary proceeding against WMI.

The adversary proceeding arose out of a mortgage (the "Mortgage") on Youkelsone's home in Brooklyn, New York. The Bank "owned, managed and serviced" the Mortgage. (App. at 187.) Youkelsone alleged, however, that WMI "controlled, supervised, directed and completely dominated all of the Bank's financial operations, … policies and business practices[.]" (App. at 184-85.) She further alleged that WMI and

---

[1] The facts described here are derived primarily from allegations in Youkelsone's first amended complaint, which, for simplicity, we refer to as the complaint. We also draw on documents of which we can take judicial notice, including matters of public record and judicial opinions. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). Because we write for the parties, to whom the lengthy procedural and factual background is well-known, we include only the background information necessary to our disposition. We recount the facts in the light most favorable to Youkelsone. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[2] Although Youkelsone continues to proceed pro se before us, we note that she is a licensed attorney admitted to practice in New York.

the Bank conducted business from the same location; had overlapping corporate officers, directors, and employees; shared "divisions, subdivisions, [and] departments"; "filed consolidated tax returns"; "operated a centralized cash management system"; "conducted all their business affairs under" the name "WaMu"; held themselves out to the "public as one entity most commonly known as 'WaMu'"; and corresponded with third parties on "letterheads bearing [the] combined name for both entities most commonly known as 'WaMu.'" (App. at 184-86.)

WMI had acquired the Mortgage in June 2001. Shortly thereafter, in September 2001, a WMI entity assigned the Mortgage to the Federal National Mortgage Association ("FNMA"), which promptly commenced a foreclosure action against Youkelsone. Youkelsone attempted to avoid foreclosure by filing a Chapter 13 bankruptcy petition. She was ultimately unsuccessful in her effort to avoid foreclosure, and she blamed WMI, saying it made fraudulent misrepresentations to the bankruptcy court. After the dismissal of that bankruptcy petition in December 2003, FNMA began to pursue a foreclosure sale.

Meanwhile, WMI, which Youkelsone alleged was still the "actual owner" of the Mortgage, (App. at 188), rejected her "multiple pleas to sell the property [through] a private sale." (App. at 191.) By early 2004, however, WMI offered to work with Youkelsone to enter into a plan to avoid a foreclosure sale. Nonetheless, according to Youkelsone, WMI "continued to pursue its foreclosure sale." (App. at 192.) Youkelsone was thus "forced" to pursue a private sale at below fair market value to avoid "economic and emotional injuries[.]" (App. at 192.) During the sale process, WMI failed to respond to Youkelsone's requests to provide a payoff statement, which was necessary for the sale

3

to proceed. Instead, WMI sent her a letter on June 30, 2004, demanding that "all sums due on the [Mortgage] … be paid immediately." (App. at 193.) With the threat of a foreclosure sale looming, WMI disregarded five additional requests from Youkelsone to provide a payoff statement. On October 24, 2004, WMI finally provided Youkelsone with the payoff statement to allow the sale to proceed. But WMI charged her fees that had accumulated during the delay caused by its failure to timely provide the payoff statement. Youkelsone paid the requested fees to obtain the papers necessary to complete the sale of her property.

Those alleged events led Youkelsone to bring a ten-count complaint against WMI containing nine New York state law causes of action – abuse of process; economic duress; breach of contract; unjust enrichment; bad faith; a violation of § 1921(4) of the New York Real Property Actions and Proceedings Law ("RPAPL"); deceptive practices; misrepresentation, fraud, and deceit; and intentional infliction of emotional harm – and one federal law cause of action based on the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.

In August 2010, the Bankruptcy Court granted WMI's motion to dismiss on three distinct legal grounds. First, it determined that the abuse of process, TILA, and intentional infliction of emotional harm claims were barred by the applicable statutes of limitations. Second, it concluded that Youkelsone's economic duress, breach of contract, bad faith, and deceptive practices claims against WMI failed due to the doctrine of issue preclusion. It determined that each of those claims related to the state foreclosure action and could only be brought against the owner of the Mortgage at the time of that action.

Because prior New York state court decisions had found that the Mortgage had been validly assigned to FNMA before FNMA initiated the foreclosure action, the Bankruptcy Court held that Youkelsone could not successfully bring those claims against WMI. Third, the Bankruptcy Court concluded that Youkelsone's RPAPL, unjust enrichment, and fraud claims failed because WMI could not be held directly or indirectly liable for any of the conduct underlying those claims.

The District Court affirmed the Bankruptcy Court's decision in all respects, and Youkelsone filed this timely appeal.

## II.    DISCUSSION[3]

Youkelsone contests only the District Court's rulings as to issue preclusion, direct liability, and indirect liability. She has not appealed the District Court's ruling affirming the dismissal of her abuse of process, TILA, and intentional infliction of emotional harm claims on statute of limitations grounds.

### A.    Issue Preclusion

Youkelsone argues that the District Court erred by affirming the dismissal of her economic duress, breach of contract, bad faith, and deceptive practices claims on issue

---

[3] The District Court had appellate jurisdiction under 28 U.S.C. § 158(a)(1). We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291. We "stand in the shoes of the district court" when reviewing bankruptcy court decisions. *In re Klaas*, 858 F.3d 820, 827 (3d Cir. 2017) (quotation marks and citation omitted). Accordingly, we exercise plenary review over the Bankruptcy Court's dismissal of Youkelsone's complaint for failure to state a claim upon which relief can be granted. *In re Majestic Star Casino, LLC*, 716 F.3d 736, 747 (3d Cir. 2013). As on any motion brought pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), we accept the complaint's allegations as true but disregard its legal conclusions. *Fowler*, 578 F.3d at 210-11. We need not, however, credit factual allegations contradicted by matters of which we may take judicial notice. *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272-73 (D.C. Cir. 2018).

preclusion grounds. She contends that those New York state law claims do not require her to demonstrate that WMI owned the Mortgage. WMI urges that we affirm the dismissal of those claims, and additionally argues that issue preclusion bars the RPAPL § 1921(4) claim because that claim too requires that WMI have owned the Mortgage at the time of the foreclosure action. We agree with WMI.

Like the District Court, we discern "no error in the Bankruptcy Court's conclusion that the respective claims were barred by issue preclusion because ownership of the [M]ortgage … is an essential element of each claim and it was previously decided against Youkelsone." (App. at 49.) Youkelsone has not provided, and we have not found, any authority to disturb the Bankruptcy Court's ruling. Moreover, WMI is correct that RPAPL § 1921(4) only holds a mortgagee liable to a borrower, and that the prior New York state court decisions held that FNMA, not WMI, was the mortgagee at the time of the foreclosure action. *See* RPAPL § 1921(4) (stating that a "mortgagee shall be liable" if it fails to timely "deliver the satisfaction of mortgage … or … any other documents as required by [law]"); *cf. Glatter v. Chase Manhattan Bank*, 239 A.D.2d 68, 71-72 (N.Y. App. Div. 1998) (discussing history of RPAPL § 1921(4)). Accordingly, we will affirm the dismissal of Youkelsone's economic duress, breach of contract, bad faith, deceptive practices, and RPAPL claims.

### B.    Direct and Indirect Liability

Although Youkelsone appears to contest the conclusion that WMI cannot be held directly liable for the conduct alleged in the complaint, the actual language of that pleading and her briefing stand in contradiction to that position. The complaint explicitly

6

alleges that WMI "owned, managed and serviced" the Mortgage "through its subsidiary Bank" (App. at 187), and Youkelsone states in her opening brief that the Mortgage was "owned, managed and serviced by the Bank," (Opening Br. at 3). As a theory of direct liability must be premised on WMI taking actions itself, Youkelsone's own allegations undermine any argument for direct liability. Her allegations actually lead to the conclusion that, if WMI is liable at all, it is indirectly liable for the Bank's actions.[4]

Youkelsone argues that the District Court erred by affirming the Bankruptcy Court's conclusion that WMI could not be held indirectly liable for the Bank's actions under Washington law.[5] Although she argued before the Bankruptcy Court and the District Court that WMI could alternatively be held liable under three distinct theories of indirect liability – corporate disregard, alter ego, and agency – she argues no specific theory of indirect liability on appeal. Instead, she relies on *Cassese v. Washington Mutual, Inc.*, 743 F. Supp. 2d 148 (E.D.N.Y. 2010), which determined that a class action complaint plausibly alleged that the Bank was "the alter-ego of WMI." *Id.* at 155. We therefore understand Youkelsone to be arguing that WMI should be held liable under an alter ego theory of indirect liability.

---

[4] The complaint, at one point, alleges that WMI "serviced the mortgage[.]" (App. at 187.) But that allegation immediately follows an allegation that WMI "serviced" the mortgage "through its subsidiary Bank." (App. at 187.) Even reading those allegations in the light most favorable to Youkelsone, we understand her to be alleging that WMI, which she alleges to be "a holding company" (App. at 183), was acting at all times through its subsidiary.

[5] Youkelsone does not contest the Bankruptcy Court's conclusion that Delaware choice of law rules lead to the application of Washington law to determine the relationship between WMI and the Bank, both Washington corporations.

Washington law only permits a court to "pierce the corporate veil under an 'alter ego' theory 'when the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist.'" *Columbia Asset Recovery Grp., LLC v. Kelly*, 312 P.3d 687, 693 (Wash. Ct. App. 2013) (quoting *Grayson v. Nordic Constr. Co.*, 599 P.2d 1271 (Wash. 1979) (internal quotation marks omitted)). That the parent company and subsidiary "are intimately related in carrying on their business for the purpose of mutual benefit is not enough to characterize a corporation as the alter ego of the other corporation." *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 599 (B.A.P. 9th Cir. 2007). We agree with the District Court and Bankruptcy Court that Youkelsone's complaint does not plausibly allege that the Bank was the alter ego of WMI because the complaint "contained conclusory allegations of law, unreasonable inferences or deductions of fact, or threadbare recitals of the elements of alter ego that need not be accepted as true." (App. at 54 (internal quotation marks and citation omitted).)

The decision of the United States District Court for the Eastern District of New York in *Cassese* does not alter that conclusion. That court actually addressed the decision of the Bankruptcy Court in this case, explaining that Youkelsone's complaint lacked the specific allegations concerning WMI's "shared identity" with the Bank that were alleged in the complaint being considered in *Cassese*. *Cassese*, 743 F. Supp. 2d at 157. Although the District Court here did not discuss the *Cassese* opinion, it nonetheless rightly determined that Youkelsone's allegations lacked the specificity required to survive WMI's motion to dismiss. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210

8

(3d Cir. 2009) ("[A] pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, we will affirm the dismissal of Youkelsone's unjust enrichment and fraud claims.

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's order affirming the Bankruptcy Court's dismissal of Youkelsone's complaint.