## BARNABAS PALMER vs. THE PRESIDENT, &c. YORK BANK.

*Mem.* SHEPLEY J., having an interest in the bank, took no part in the hearing or decision of this case.

A statute giving four times as much damage, as is allowed by law for the detention of other debts, is penal in its character; but as it is given to the party injured, who seeks the recovery of a just debt, to which the increased damages are made an incident, a suit therefor it is not properly to be regarded as a penal action.

Wherever penal damages are given by statute to the party injured, where he had a remedy at common law, if he would claim the statute damages, he should do so by a reference to the statute.

If the owner of bills would hold a bank to the payment of the penal damages given by statute, on neglect to make payment in gold or silver on demand, or within the time limited, he must distinctly claim such damages in his declaration, or he will be restricted to the measure of damages which the law accords to other creditors.

In an action against a bank, on its bills, where the declaration has no reference whatever to the statute, and makes no claim to the twenty-four *per cent.* damages; and where the defendants have been defaulted, and the plaintiff has received the amount of his bills and six *per cent.* interest; and the question, whether he is entitled to an additional eighteen *per cent.* has been argued ; if a motion to amend the declaration be then made, it will not be granted.

THE declaration in this action contained one count for money had and received ; also a set of many counts, similar to that which

is to follow, numbered one; also a set of counts similar to that herein numbered two; also a set of counts similar to that numbered three. The second and third sets of counts, were on the same bills, the one alleging a presentment thereof by *Perkins,* and the other by the plaintiff. The counts allege presentments at the bank at different times during the suspension of specie payments by the *New England* banks, the first on *July* 22, 1837, and the last on *January* 23, 1838. A few days prior to the resumption of specie payments by those banks, *July* 13, 1838, the bank tendered to the plaintiff the amount of the bills presented, with six *per cent.* interest, and a sum in addition thereto to cover any expenses. The plaintiff refused to receive the money tendered, and on *October* 13, 1838, brought his action, the writ being made returnable to the *April Term* of the Supreme Judicial Court, 1839. The money tendered was brought into Court on the first day of the term at which the action was entered. The defendants were defaulted on the second day, and entered a prayer to be heard in damages. The plaintiff took the money out of court, claiming a further sum to the extent of twenty-four *per cent. per annum.*

Copies of one of each set of counts :

No. 1. "Also, for that the said *President, Directors, and Company of the York Bank,* being a banking corporation within this State, by law duly incorporated and established at *Saco* in the county of *York,* on the fourth day of *October,* in the year of our Lord one thousand eight hundred and thirty-one, made their other certain note and bill in writing, of that date, signed by the president and cashier of said bank, wherein and whereby the said *President, Directors and Company* promised to pay *William Lord* or bearer, at their banking house, five dollars, on demand — which said note and bill, so made and signed as aforesaid, was thereafterwards, on the same day, by said *President, Directors and Company,* duly issued from said bank, and thereafterwards on the same day, for a valuable consideration, the said note and bill was duly assigned and delivered over to the plaintiff, who thereby became the bearer thereof: Of all which the said *President, Directors and Company* thereafterwards on the same day had notice, and in consideration thereof, then and there promised the plaintiff to pay him the contents of said bill and note, accord-

ing to the tenor thereof : — And the plaintiff thereafterwards, at said *Saco,* on the twenty-second day of *July,* in the year of our Lord one thousand eight hundred and thirty-seven, in the usual banking hours of said day, presented the said bill and note of said corporation to the cashier of said bank, at their banking house for payment ; and then and there at said bank, in the usual banking hours of said bank, demanded payment of said bill and note of said cashier ; and the said cashier and the officers of said bank then and there refused to pay the same, and afterwards so contin-. ued to delay and refuse to pay the same for the term of more than fifteen days thereafter, and still delay and refuse to pay the same."

No. 2. " Also, for that the said *President, Directors and Company of the York Bank,* being a banking corporation within this State, by law duly incorporated and established at *Saco,* in said county of *York,* on the first day of *May,* in the year of our Lord one thousand eight hundred and thirty-two, made their other certain note and bill in writing, of that date, signed by the president and cashier of said bank, wherein and whereby the said *President, Directors and Company* promised to pay *J. Chadwick,* or bearer, at their banking house, five dollars on demand : — which said note and bill so made and signed as aforesaid, was thereafter-wards on the same day, by said *President, Directors and Company* duly issued from said bank, and thereafterwards on the same day, for a valuable consideration, the said note and bill was duly assigned and delivered over to one *John G. Perkins,* who thereby became the bearer thereof : Of all which the said *President, Directors and Company* thereafterwards on the same day had notice, and in consideration thereof then and there promised said *Perkins* to pay him the contents of said note and bill, according to the tenor thereof. And the said *Perkins* thereafterwards, at said *Saco,* on the first day of *August,* in the year of our Lord one thousand eight hundred and thirty-seven, in the usual banking hours of said day, presented said bill and note of said corporation to the cashier of said bank, at their banking house, for payment, and then and there at said bank, in the usual banking hours of said bank, demanded payment of said bill and note of said cashier ; and the said cashier and the officers of said bank then and there refused to pay the same to said *Perkins,* and afterwards so contin-

ued to delay and refuse to pay the same to him for more than fifteen days thereafter. — And thereafterwards on the twenty-third day of *January*, in the year of our Lord one thousand eight hundred and thirty-eight, the said *Perkins* for a valuable consideration, assigned, transferred and delivered the same bill and note, then due and unpaid, to the plaintiff, who thereby became the bearer thereof. Of all which the said *President, Directors and Company* afterwards, to wit, on the twenty-third day of *January* in the year of our Lord one thousand eight hundred and thirty-eight, at *Saco* aforesaid, had notice, and in consideration thereof then and there promised the plaintiff to pay him the contents of said bill and note according to the tenor thereof. Yet the said *President, Directors and Company* have never paid said bill and note to the plaintiff, but still delay and refuse to do it."

No. 3. " Also for that the said *President, Directors and Company of the York Bank*, being a banking corporation within this State, by law duly incorporated and established at *Saco* in the county of *York*, on the fourth day of *February*, in the year of our Lord one thousand eight hundred and thirty-five, made their other certain note and bill in writing, of that date, signed by the president and cashier of said bank, wherein and whereby the said *President, Directors and Company* promised to pay *Joshua Maxwell* or bearer, at their banking house, five dollars on demand — which said note and bill, so made and signed as aforesaid, was thereafterwards on the same day, by said *President, Directors and Company*, duly issued from said bank, and thereafterwards, on the same day, for a valuable consideration, the said note and bill was duly assigned and delivered over to the plaintiff, who thereby became the bearer thereof: Of all which the said *President, Directors and Company* thereafterwards, on the same day had notice, and in consideration thereof, then and there promised the plaintiff to pay him the contents of said bill and note, according to the tenor thereof: — And the plaintiff thereafterwards, at said *Saco*, on the twenty-third day of *January*, in the year of our Lord one thousand eight hundred and thirty-eight, in the usual banking hours of said day, presented the said bill and note of said corporation to the cashier of said bank, at their banking house for payment; and then and there at said bank, in the usual banking

hours of said bank, demanded payment of said bill and note of said cashier; and the said cashier and the officers of said bank then and there refused to pay the same, and afterwards so continued to delay and refuse to pay the same for the term of more than fifteen days thereafter, and still delay and refuse to pay the same."

At the close of the argument, the counsel for the plaintiff remarked, that if the Court should be of opinion, that the plaintiff could not recover twenty-four *per cent.* interest, as the declaration then stood, he wished for leave to amend.

*Preble*, for the plaintiff, in the course of his argument, cited *st.* 1831, respecting banks, *c.* 519, § 11, 20; *st.* 1821, regulating inland bills of exchange, *c.* 88; *Field* v. *Nickerson*, 13 *Mass. R.* 137; *Carley* v. *Vance*, 17 *Mass. R.* 389; *McMillan* v. *Eastman*, 4 *Mass. R.* 378; 1 *Saund.* 250; 1 *Burr*, 402.

The late Judge *Mellen* and *J. Shepley*, for the defendants, under the expectation that the case would be argued in writing, immediately after the term at which the action was entered, made their written arguments, but they were not handed to the Court, as the counsel for the plaintiff declined to adopt that course. *Mellen* was expected to take the principal part, and prepared his argument, and sent it to *Shepley*, with the request that he would also furnish remarks and additional authorities, which was done. At the argument in 1840, each used, as his brief, his written argument, adding a few more authorities. Expecting to receive the very learned argument of his senior, the Reporter did not take minutes of it; and as he is not possessed of this brief, much to his regret, he cannot give the views or authorities there taken.

*Shepley* said, that the plaintiff, under any declaration which could be framed on the facts, could not recover the two *per cent.* per month; that the acts of 1836, *c.* 233, and 1838, *c.* 326, were to govern; and that by those acts, before the holder of the bills can recover a penalty, he must make a second presentment at the expiration of the thirty or fifteen days given.

But if the *st.* of 1838 is not applicable, and we are to look only at the *st.* of 1831, still but six *per cent.* interest can be recovered. The special counts, after setting forth the bill, and that it came

into the hands of the plaintiff for value, alleges that the defendants "then and there promised the plaintiff to pay him the contents of said bill or note according to the tenor thereof." This is the only promise or allegation of liability to be found in the special counts. The plaintiff then states a demand at the bank, and that "the cashier and the officers of said bank then and there refused to pay the same, and afterwards so continued to delay and refuse to pay the same, for the term of more than fifteen days thereafter, and still delay and refuse to pay the same." There is not the slightest reference to the statute, nor to the two *per cent.* per month in the declaration. The statement of the delay of fifteen days is mere surplusage, as the general allegation of delay and refusal covers that time and much more. If the plaintiff intended to claim but six *per cent.* interest, could he omit any material allegation in his count, and have a good writ?

" If a statute give a remedy for a matter which was actionable at common law, without expressly or by necessary implication, taking away the common law remedy, the action may be brought either at common law or upon the statute." "And if the plaintiff intends to rely upon the statute, if it is a public one, he must refer to it, otherwise it will be a waiver of his remedy upon the statute, and he will be obliged to rely on his remedy at the common law, or fail in his action. 2 *Inst.* 200; *Oliver's Prec. of Decl.* 450, referring to *Coke* ; 1 *Com. Dig.* 446, 447, *(Day's Ed.) Action upon statute, A* 3, *C.* "If a man bring his action at common law, he waives his remedy by the statute." *Com. Dig. Action upon stat. C. citing* 2 *Rol.* 49. "If a statute give a remedy in the affirmative, without a negative express or implied, for a matter actionable at common law, the party may pursue either remedy." 1 *Day's Com. Dig.* 448.

It is believed, that there is no one position better established in law, than that if a party seeks to recover damages given by a statute for a violation of any of its provisions, he must not only state in his declaration all the facts necessary to bring his case within its provisions, but must refer to the statute giving the penalty or damage, either expressly, or generally, " according to the form of the statute in such case made and provided." *Heald* v. *Weston,* 2 *Greenl.* 348; *Barter* v. *Martin,* 5 *Greenl.* 78; *Ba-*

*yard* v. *Smith*, 17 *Wend.* 88. And it is wholly immaterial, whether it be what is technically called a penal action, or one given by statute to an aggrieved party to recover his damages, with an additional sum. 17 *Wendell*, 88, and many authorities cited by Judge *Mellen* are of the latter class. The statute, however, calls the two *per cent.* per month a penalty, and it is so called in the case *Worcester Bank* v. *Suffolk Bank*, 5 *Pick.* 106. The proviso in the statute should have been negatived, if it is intended as a declaration on the statute. *Smith* v. *Moore*, 6 *Greenl.* 274.

Should there be a motion to amend, it cannot be permitted, as it would introduce a new cause of action. *Mason* v. *Waite*, 1 *Pick.* 452.

The opinion of the Court was drawn up and delivered at the *April Term*, 1841, by

WESTON C. J. — In none of the counts in the plaintiff's declaration, is there any reference to the statute, upon which he claims to be allowed four fold interest by way of damages. If this falls within the class of penal actions, the current of authorities require, that the facts charged should be averred to be against the form of the statute, upon which it is based. The statute, upon which the plaintiff relies, calls the twenty-four *per cent.* damages, it imposes, a penalty. A similar statute in *Massachusetts* is called by the court highly penal, in the case of the *Suffolk Bank* v. *the Worcester Bank*, 5 *Pick.* 106. As it gives four times as much damage, as is allowed by law for the detention of the other debts, it is certainly penal in its character. But as it is given to the party injured, who seeks the recovery of a just debt, to which these increased damages are made an incident, we are not satisfied that it is to be regarded properly as a penal action.

In *Reed* v. *Northfield*, 13 *Pick.* 96, a similar point was raised, and the authorities bearing upon the question were examined, to which we refer, without deeming it necessary to cite them in detail. *Shaw C. J.*, who delivered the opinion of the Court, takes a distinction between an action brought for damages given by statute to the party injured, and an action for a statute penalty, *eo nomine*. The action then under consideration, was for double

damages, sustained by a defect in the highway. The Chief Justice says : " In the present case, we think the action is purely remedial, and has none of the characteristics of a penal prosecution. All damages for neglect or breach of duty, operate to a certain extent as punishment ; but the distinction is, that it is prosecuted for the purpose of punishment, and to deter others from offending in like manner." And it was held by the Court, that the averment that upon the facts charged and by " force of the statute in that case made and provided," the town became liable, was sufficient.

In *Bayard* v. *Smith*, 17 *Wendell*, 88, which was an action for damages by the party injured by false weights, given by statute, the Court held a general reference to the statute sufficient. And in a note by the reporter, he states that a general reference is all, which can be required in such cases. If this is necessary, where the action is founded *altogether* on a public statute, of which the Court take judicial notice, it would seem to be still more necessary, where there is also a concurrent remedy at common law. In trespass by one tenant in common against another for treble damages, a reference to the statute, which imposes them, has always been deemed indispensable. So in actions against the sheriff for five fold interest, for not paying over money collected on demand, averments of his liability to this extent under the statute, are inserted in the declaration. And wherever penal damages are given by statute to the party injured, where he had before a remedy at common law, we are of opinion, that if he would claim the statute damages, the weight of authority requires, that he should do so by a reference to the statute.

If the plaintiff had averred the liability of the defendants to pay the fourfold interest, we should have been more strongly inclined to have got over this technical objection. But he sets up no such liability. The legal assumpsit, upon which he declares is, that in consideration of the previous averments, the defendants promised to pay each bill, according to its tenor. Facts are set forth, upon which a liability to increased damages under the statute might arise, but such liability is not charged, nor any such claim made by the plaintiff.

With every disposition to sustain a law, which has been deemed wise and salutary, and has repeatedly received the sanction of the

legislature, both in *Massachusetts* and in this State, we feel constrained to decide, that if a plaintiff would avail himself of its provisions, he should set forth distinctly and affirmatively the extent of his claim. How much forbearance, the holders of bills might reasonably be expected to practice, under peculiar circumstances, each must decide for himself; but if he would hold a bank to the payment of the penal damages, given by statute, it cannot be regarded too much to require, that he should distinctly claim them in his declaration. If he does not, it is not unreasonable, that he should be restricted to the measure of damages, which the law accords to other creditors.

In the *Suffolk Bank* v. *The Worcester Bank*, a question was presented about the penal damages. The declaration contained only a count for money had and received; but it was submitted to the court upon a case stated. Their attention was not called to the form of declaring.

The plaintiff has moved for leave to amend, if necessary. We do not deem it reasonable to grant it in this stage of the proceedings. The defendants have been defaulted upon the declaration, as it stood. The plaintiff has been paid principal and legal interest. The case has been argued upon the existing counts. And we do not feel justified in allowing them to be amended.