MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 141
Docket:      BCD-15-430
Argued:      April 7, 2016
Decided:     September 13, 2016

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent:     ALEXANDER and JABAR, JJ.

ALEC T. SABINA et al.

v.

JPMORGAN CHASE BANK, N.A.

GORMAN, J.

[¶1]  Alec T. and Emma L. Sabina appeal from a judgment entered in the Business and Consumer Docket (*Murphy, J.*) dismissing their action against JPMorgan Chase Bank, N.A., (Chase), in which they claimed that Chase failed to comply with the statute governing the discharge of a mortgage, 33 M.R.S. § 551 (2015).  We vacate the judgment and remand the matter for further proceedings.

## I.  BACKGROUND

[¶2]  The Sabinas filed their amended complaint against Chase in the Business and Consumer Docket on April 27, 2015.  They alleged the following

2

facts, which we view as admitted for purposes of this appeal. *See Andrews v. Sheepscot Island Co.*, 2016 ME 68, ¶ 2, 138 A.3d 1197.

[¶3] In March of 2011, the Sabinas received a loan from Chase that was secured by a mortgage on their real property in Portland. When they finished paying off the mortgage in October of 2013, Chase executed a written mortgage release and recorded that document in the Cumberland County Registry of Deeds. The registry then returned the recorded mortgage release to Chase. Chase mailed a copy of the document to the Sabinas, but it retained the actual document that it received from the registry. The Sabinas claimed that Chase violated 33 M.R.S. § 551 by failing to mail them the "original" mortgage release document.[1]

[¶4] Chase moved to dismiss the action pursuant to M.R. Civ. P. 12(b)(6). After a hearing in July of 2015, the court granted Chase's motion and dismissed the case with prejudice. The court concluded that 33 M.R.S. § 551 is ambiguous as to whether a mortgagee complies with the statute when it mails a copy of the mortgage release, as opposed to the "original," to the mortgagor. Construing section 551 strictly as a "penal" statute, the court concluded that mailing a copy of the recorded document accomplishes the

---

[1] The Sabinas also brought their claim as a class action on behalf of similarly situated borrowers. *See* M.R. Civ. P. 23. Their class action allegations are not at issue in this appeal.

purpose of the statute, noting that the statute does not contain the word "original." This appeal followed.

## II. DISCUSSION

[¶5] Reviewing a trial court's dismissal for failure to state a claim upon which relief can be granted pursuant to M.R. Civ. P. 12(b)(6), "we view the facts alleged in the complaint as if they were admitted." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254 (per curiam) (quotation marks omitted). "We review the legal sufficiency of the complaint de novo and view the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quotation marks omitted).

[¶6] We review a trial court's interpretation of a statute de novo as a question of law. *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 57, 956 A.2d 110. We look first to the plain language of the statutory provision at issue to determine its meaning, and "we interpret [statutory] provisions according to their unambiguous meaning unless the result is illogical or absurd." *MaineToday Media, Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104 (quotation marks omitted). Interpreting the plain language of a statute also involves

considering the statute's "subject matter and purposes . . . and the consequences of a particular interpretation." *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621. "[O]nly if the statute is ambiguous will we look to extrinsic indicia of legislative intent such as relevant legislative history." *Strout v. Cent. Me. Med. Ctr.*, 2014 ME 77, ¶ 10, 94 A.3d 786 (quotation marks omitted).

[¶7]  When a mortgagor performs his or her payment obligations according to the mortgage, the mortgagee's security interest in the subject property is extinguished. 4 Richard R. Powell, *Powell on Real Property* § 37.33[1]-[2] at 37-226 (Michael Allan Wolf ed., 2005). Generally, so that the cloud on the property owner's title is removed, the mortgagee must execute and record a formal instrument of release or satisfaction. *Id.*  In Maine, the discharge of a mortgage is governed by 33 M.R.S. § 551.[2]

---

[2]  Title 33 M.R.S. § 551 (2015) provides, in its entirety:

**§ 551.  Entry on record; neglect to discharge**

A mortgage only may be discharged by a written instrument acknowledging the satisfaction thereof and signed and acknowledged by the mortgagee or by the mortgagee's duly authorized officer or agent, personal representative or assignee. The instrument must recite the name or identity of the mortgagee and mortgagor, or their successors in interest and the record location of the mortgage discharged. The instrument, when recorded, has the same effect as a deed of release duly acknowledged and recorded.

Within 60 days after full performance of the conditions of the mortgage, the mortgagee shall record a valid and complete release of mortgage together with any

[¶8] Section 551 first explains how mortgages are discharged after payment in full: "by a written instrument acknowledging the satisfaction" of the mortgage that, "when recorded, has the same effect as a deed of release duly acknowledged and recorded." 33 M.R.S. § 551. Next, the statute requires the mortgagee to undertake two actions: first, within a specific time period, it

instrument of assignment necessary to establish the mortgagee's record ownership of the mortgage. Within 30 days after receiving the recorded release of the mortgage from the registry of deeds, the mortgagee shall send the release by first class mail to the mortgagor's address as listed in the mortgage agreement or to an address specified in writing by the mortgagor for this purpose. As used in this paragraph, the term "mortgagee" means both the owner of the mortgage at the time it is satisfied and any servicer who receives the final payment satisfying the debt. If a release is not transmitted to the registry of deeds within 60 days, the owner and any such servicer are jointly and severally liable to an aggrieved party for damages equal to exemplary damages of $200 per week after expiration of the 60 days, up to an aggregate maximum of $5,000 for all aggrieved parties or the actual loss sustained by the aggrieved party, whichever is greater. If multiple aggrieved parties seek exemplary damages, the court shall equitably allocate the maximum amount. If the release is not sent by first class mail to the mortgagor's address as listed in the mortgage agreement or to an address specified in writing by the mortgagor for this purpose within 30 days after receiving the recorded release, the mortgagee is liable to an aggrieved party for damages equal to exemplary damages of $500. The mortgagee is also liable for court costs and reasonable attorney's fees in any successful action to enforce the liability imposed under this paragraph. The mortgagee may charge the mortgagor for any recording fees incurred in recording the release of mortgage and any postage fees incurred in sending the release to the mortgagor.

With respect to a mortgage securing an open-end line of credit, the 60-day period to deliver a release commences after the mortgagor delivers to the address designated for payments under the line of credit a written request to terminate the line and the mortgage together with payment in full of all amounts secured by the mortgage. The mortgagee may designate in writing a different address for delivery of written notices under this paragraph.

All discharges of recorded mortgages, attachments or liens of any nature must be recorded by a written instrument and, except for termination statements filed pursuant to Title 11, section 9-1513, acknowledged in same manner as other instruments presented for record and no such discharges may be permitted by entry in the margin of the instrument to be discharged.

6

must "record[3] a valid and complete release of mortgage"; second, "[w]ithin 30 days after receiving the recorded release of the mortgage from the registry of deeds, the mortgagee shall send the release by first class mail to the mortgagor's address." 33 M.R.S. § 551. The statute also provides for exemplary damages in the event that the mortgagee fails to complete either action. 33 M.R.S. § 551.

[¶9] Based on the statute's plain language, we conclude that it unambiguously requires the mortgagee to send to the mortgagor the mortgage release document that it receives from the registry, and not a copy of that document. After requiring the mortgagee to record "a valid and complete release of mortgage," the statute then states, in the next sentence, that within thirty days after receiving "*the recorded release*" from the registry of deeds, the mortgagee must mail "*the release*" to the mortgagor. 33 M.R.S. § 551 (emphases added). The Legislature's use of the definite article "the"— as opposed to the indefinite article "a" or the phrase "a copy of"—indicates that it intended to require the mortgagee to mail the same document that it

---

3 Used in this sense, the "recording" of a document like a mortgage release involves no more and no less than sending the document to the appropriate registry with the required fee. *Compare* Black's Law Dictionary 1465 (10th ed. 2014) (defining the verb "record" as "[t]o deposit (an original or authentic official copy of a document) with an authority" and providing, as an example, "she recorded the deed in the county property office"), *with id.* at 1473 (defining "register of deeds" as "[a] public official who *records* deeds, mortgages, and other instruments affecting real property" (emphasis added)).

receives from the registry of deeds.[4] *See Lydon v. Sprinkler Servs.*, 2004 ME 16, ¶¶ 13-14, 841 A.2d 793.

[¶10]  Although the dissent is correct to note that, at one time, *the only purpose of the statute was to ensure that discharges are filed with the county registries*, *see* Dissenting Opinion ¶ 16, that changed in 2011, when the Legislature added the two sentences that are at issue here.  *See* P.L. 2011, ch. 146, § 1 (effective Sept. 28, 2011).  The relevant language added by the Legislature is highlighted below:

> Within 60 days after full performance of the conditions of the mortgage, the mortgagee shall record a valid and complete release of mortgage together with any instrument of assignment necessary to establish the mortgagee's record ownership of the mortgage.  *Within 30 days after receiving the recorded release of the mortgage from the registry of deeds, the mortgagee shall send the release by first class mail to the mortgagor's address as listed in the mortgage agreement or to an address specified in writing by the mortgagor for this purpose.* As used in this paragraph, the term "mortgagee" means both the owner of the mortgage at the time it is satisfied and any servicer who receives the final payment satisfying the debt.  If a release is not transmitted to the registry of deeds within 60 days, the owner and any such servicer are jointly and severally liable to an aggrieved party for damages equal to exemplary damages of $200 per week after expiration of

---

[4] Because we conclude that section 551's mailing provision is unambiguous, we do not address the parties' arguments regarding the "penal" or "remedial" nature of the statute. *See Violette v. Macomber*, 125 Me. 432, 434, 134 A. 561 (1926) ("The rule of strict construction of a penal law is subordinate to the rule of reasonable, sensible construction . . . ."); *see also* 3 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 58:1 at 103 (7th ed. 2008) ("Strict construction cannot be used to defeat the clear intent of the statute . . . ."); *id.* § 59:8 at 228 ("[W]hen legislative intent can be determined from the language of the statute, it will be given effect without resort to other aids of construction.").

the 60 days, up to an aggregate maximum of $5,000 for all aggrieved parties or the actual loss sustained by the aggrieved party, whichever is greater. If multiple aggrieved parties seek exemplary damages, the court shall equitably allocate the maximum amount. *If the release is not sent by first class mail to the mortgagor's address as listed in the mortgage agreement or to an address specified in writing by the mortgagor for this purpose within 30 days after receiving the recorded release, the mortgagee is liable to an aggrieved party for damages equal to exemplary damages of $500.* The mortgagee is also liable for court costs and reasonable attorney's fees in any successful action to enforce the liability imposed under this paragraph. The mortgagee may charge the mortgagor for any recording fees incurred in recording the release of mortgage and any postage fees incurred in sending the release to the mortgagor.

*Id.* (emphases added). We agree that we must always endeavor to avoid creating an absurd result when attempting to determine the Legislature's intent. Here, however, where the language is not ambiguous, we must accept that, by adding this language, the Legislature intended to create a new obligation for mortgagees. *See Wong v. Hawk*, 2012 ME 125, ¶ 8, 55 A.3d 425 ("Words in a statute must be given meaning and not treated as meaningless or superfluous." (quotation marks omitted)).

[¶11] The Legislature's choice not to use the word "original" does not make the statute ambiguous. In fact, as became clear at oral argument, use of the word "original" would likely have created ambiguity. Chase argues that many registries now accept submission of electronic documents for recording,

and so the "wet ink original" may never reach the registry. Electronic recording was not alleged in this case but, assuming that such a possibility exists, a mortgagee that submits a document electronically can still mail to the mortgagor *the release that it receives from the registry*, as required by the statute.[5]

[¶12] To the extent that the Sabinas argue that section 551 requires a mortgagee to mail to the mortgagor the "wet ink original" document, even where the registry of deeds never receives that document, we cannot agree that the statute imposes such a requirement. The mailing requirement commands the mortgagee to give the legally operative mortgage release document to the mortgagor. The document the mortgagee must mail to the mortgagor, therefore, is the recorded mortgage release document that the mortgagee receives from the registry of deeds, even when that document is not the "wet ink original."

[¶13] Here, in their amended complaint, the Sabinas alleged that Chase mailed a copy of the recorded mortgage release document that it received from the registry, instead of the actual document. Because these allegations

---

[5] Neither party has asserted that Maine's registries return recorded mortgage releases to mortgagees only in electronic format. If the registries start to do so, however, the Legislature may wish to clarify how a mortgagee could "send the release by first class mail" to a mortgagor, 33 M.R.S. § 551.

were sufficient to state a claim that Chase violated section 551, the trial court erred when it dismissed the action, and we vacate the judgment and remand the case for further proceedings.[6]

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

JABAR, J., with whom ALEXANDER, J., joins, dissenting.

[¶14] I respectfully dissent because the copy of the recorded instrument sent to the mortgagor accomplishes the intended purpose of the statute. I agree with the Court when it states that "we interpret [statutory] provisions according to their unambiguous meaning unless the result is illogical or absurd." This is a case where interpreting a statute according to its unambiguous meaning leads to an absurd result.

[¶15] We have noted:

In determining the legislative intent, we look first to the plain meaning of the statutory language, and we construe that language to avoid absurd, illogical or inconsistent results. In addition to examining the plain language we also consider the whole

---

[6] We are not persuaded by Chase's argument that our interpretation renders section 551 unconstitutionally vague. *See Me. Milk Producers, Inc. v. Comm'r of Agric., Food & Rural Res.*, 483 A.2d 1213, 1220-21 (Me. 1984); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).

> statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved.

*Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me. 1994) (citations omitted) (quotation marks omitted); *see also Sunshine v Brett*, 2014 ME 146, ¶ 13, 106 A.3d 1123.

[¶16]   Although I believe that the language of the statute is unambiguous, we must construe the language in such a way as to avoid "absurd and illogical" results.  The main purpose of Title 33 M.R.S. § 551 is to ensure that mortgagees file discharges with the registry immediately following a mortgagor's payment of the mortgage, and notify the mortgagor that the discharge was filed.  Section 551 was enacted to address the problem associated with banks failing to record discharges when mortgagors pay off a note and the accompanying mortgage.  In *Currier v Huron*, 2008 ME 19, ¶ 21, 940 A.2d 1085, we stated that the purpose of section 551 is to "ensure timely discharges," because "[m]ortgages have become a national enterprise . . . [and] with this national expansion[,] there has been a proliferation of mortgagees failing to timely file discharge mortgages."

[¶17]   The failure of mortgagees to record these discharges creates problems for mortgagors when they later attempt to convey or encumber

12

their property. In response to these problems, legislatures have enacted statutes providing for penalties to encourage mortgagors to promptly file these discharges. The requirement that the mortgagee send the mortgagor evidence of such recordings is not to give the mortgagor any type of valuable document; rather it is to force mortgagees like JPMorgan Chase to promptly record discharges and to inform the mortgagor that the discharge has indeed been recorded. The written document sent to the mortgagor—whether a release deed or another instrument meeting the statutory requirements—has no inherent value other than to show that the discharge has been recorded in the registry of deeds.[7] Sending a photocopy of the discharge performs the same function as does sending the original.

[¶18] In holding that section 551 requires mortgagees to provide mortgagors with the original release instrument, the Court places much emphasis on the term "the release." There is no special significance to the use of the term "release" in the statute. The caption to 551 reads: "Entry on record; neglect to discharge." The text of section 551 does not use the terms "original" or "copy." Furthermore, the first paragraph of section 551 uses the term "written instrument," but later in the section the term "release" is used.

---

[7] The filing of the discharge with the registry of deeds is what affords the mortgagor title protection. Title 16 M.R.S. § 453 (2015) provides that properly attested copies of documents filed in the registry of deeds may be used in evidence.

The statute also provides that although the instrument filed by the mortgagee need not be a deed of release; once it has been properly recorded it has the same effect as a deed of release. *Id.* However we characterize the recorded document, its requirements are clear: it must contain the name or identity of the mortgagee and the mortgagor and their successors in interest in addition to the record location of the mortgage discharged. *Id.* That the statute does not clearly specify what type of instrument must be recorded is further proof that the purpose of section 551 is to facilitate recording with the registry, and to require mortgagees to promptly inform the mortgagor that the release was recorded.

[¶19] The Court has interpreted the language of section 551 according to its unambiguous meaning, but I believe the result is illogical or absurd. Penalizing a bank $500 per violation for noncompliance with the statute, when the bank accomplishes the purpose of the statute—recording the discharge with the registry and sending a photocopy of the discharging instrument to the mortgagor—does not make sense. The mortgagor is put in exactly the same legal position by receiving a photocopy of the instrument as she or he would have been had she or he received the original written instrument.

14

[¶20]   It does not make any difference whether the statute is characterized as penal or remedial: we must apply common sense when we interpret it.  And it does not make sense—or, stated differently, it would be "illogical and absurd"—to penalize the bank $500 for supplying the required information to the mortgagor by sending a photocopy of the discharging instrument.

[¶21]  For these reasons, I would affirm.

---

**On the briefs:**

Michael R. Bosse, Esq., Daniel J. Mitchell, Esq., and Meredith C. Eilers, Esq.,  Bernstein Shur, Portland, for appellants Alec T Sabina and Emma L. Sabina

Todd S. Holbrook, Esq., Morgan, Lewis & Bockius, Boston, Massachusetts, and Robert M. Brochin, Esq., and Brian M. Ercole, Esq., Morgan, Lewis & Bockius, Miami, Florida, for appellee JPMorgan Chase Bank, N.A.

**At oral argument:**

Daniel J. Mitchell, Esq., for appellants Alec T Sabina and Emma L. Sabina

Robert M. Brochin, Esq., for appellee JPMorgan Chase Bank, N.A.