MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 124
Docket:       BCD-18-219
Argued:       February 5, 2019
Decided:      July 30, 2019
Revised:      November 19, 2019

Panel:        ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

PAMELA A. DENUTTE

v.

U.S. BANK, N.A.

HJELM, J.

[¶1] After borrowing money from a financial institution and executing a mortgage to secure the loan, Pamela A. Denutte fully performed her obligations arising from the transaction. She alleges that despite *her* performance, U.S. Bank, N.A.—the servicer of the mortgage—did not fulfill *its* statutory duty when it came time for the mortgage to be discharged. *See* 33 M.R.S. § 551 (2018). She filed a complaint against U.S. Bank based on that alleged statutory violation, but, on motion filed by U.S. Bank, the Business and Consumer Docket (*Murphy, J.*) dismissed the complaint as time-barred. Denutte appeals from that judgment, which we now affirm.

## I. BACKGROUND

[¶2]  In her complaint, Denutte alleged the following facts, which we treat as admitted for the purpose of determining whether the allegations state a viable claim for relief.  *See Sabina v. JPMorgan Chase Bank, N.A.*, 2016 ME 141, ¶ 2, 148 A.3d 284.

[¶3]  In December of 2008, Denutte obtained a loan from Merrimack Mortgage Company, Inc.  Denutte's promise to satisfy her loan obligations was secured by a mortgage encumbering real property she owned in South Portland.  After Denutte fully performed her obligations, Merrimack discharged the mortgage by executing a written release dated May 17, 2013.  U.S. Bank, acting as the servicer of Merrimack's mortgage-secured loans, recorded the release in the Cumberland County Registry of Deeds.  The recording was timely as measured by 33 M.R.S. § 551, which requires a mortgagee to record a written release of a mortgage "[w]ithin 60 days after full performance of the conditions of the mortgage."  On June 6, 2013, the registry mailed the original recorded mortgage release to U.S. Bank, and U.S. Bank received the recorded instrument no later than three business days later.  In early September of 2013— approximately three months after it received the original recorded mortgage release back from the registry—U.S. Bank mailed the release to Denutte.

[¶4]  Four years later, on September 27, 2017, Denutte filed a complaint in the Superior Court (Cumberland County) alleging that U.S. Bank had violated another portion of 33 M.R.S. § 551—the mailing obligation, which requires a mortgagee[1] to mail the original recorded mortgage release to the mortgagor within thirty days after the mortgagee receives the recorded release back from the registry of deeds.[2]  *See Sabina*, 2016 ME 141, ¶ 9, 148 A.3d 284.  In her complaint, Denutte asserted that, because of the statutory violation, U.S. Bank is liable to her as the statute provides—for "exemplary damages" of $500 and her reasonable attorney fees and costs.

[¶5]  The case was transferred to the Business and Consumer Docket, and soon after, in December of 2017, U.S. Bank moved to dismiss Denutte's complaint as time-barred and therefore failing to state a claim upon which relief may be granted, *see* M.R. Civ. P. 12(b)(6).  In its motion, U.S. Bank contended that Denutte's claim for a violation of section 551's mailing obligation was subject to and barred by the one-year statute of limitations provided in 14 M.R.S. § 858 (2018) for "[a]ctions for any penalty or forfeiture

---

[1] Section 551 defines the term "mortgagee" to mean "both the owner of the mortgage at the time it is satisfied and any servicer who receives the final payment satisfying the debt."  33 M.R.S. § 551 (2018).  The applicability of section 551 to U.S. Bank with regard to Denutte's mortgage is not in dispute here.

[2] Denutte brought her claim as a class action on behalf of herself and all others similarly situated. *See* M.R. Civ. P. 23.  The class action aspects of the complaint are not at issue in this appeal.

4

on a penal statute." Denutte responded that the statutory mailing obligation is remedial rather than penal and is therefore controlled, not by the one-year limitation period of section 858, but by the six-year period of limitations that applies more generally to civil claims, *see* 14 M.R.S. § 752 (2018) ("All civil claims shall be commenced within 6 years after the cause of action accrues . . . except as otherwise specially provided.").[3]

[¶6]  In March of 2018, the court issued a judgment determining that the portion of section 551 creating the mailing requirement is a penal statute, that an award of damages for its violation is a penalty, and that a claim for violating the mailing requirement is therefore subject to the one-year statute of limitations prescribed in section 858.  The court concluded that the complaint was time-barred because Denutte filed her complaint more than one year after the alleged violation.  Denutte's motion for reconsideration was denied by the court, *see* M.R. Civ. P. 7(b)(5), 59(e), and she then filed this timely appeal, *see* M.R. App. P. 2B(c)(2)(D).

## II.  DISCUSSION

[¶7]  When "[r]eviewing a trial court's dismissal for failure to state a claim upon which relief can be granted pursuant to M.R. Civ. P. 12(b)(6), we view the

---

[3]  Denutte also contended in the trial court that the mailing requirement contained in section 551 is regulatory and thus cannot be penal.  She does not press that theory on appeal.  *See infra* n.10.

facts alleged in the complaint as if they were admitted." *Sabina*, 2016 ME 141, ¶ 5, 148 A.3d 284 (quotation marks omitted). We construe the allegations in Denutte's complaint in the light most favorable to her, and we review the legal sufficiency of her complaint de novo. *Id.*

[¶8] The determination of "[w]hich [statute of] limitations period applies to a given claim is a matter of statutory construction," which we also review de novo. *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶ 16, 147 A.3d 824. We examine the "plain language of the statutory provision at issue to determine its meaning, . . . [which] involves considering the statute's subject matter and purposes and the consequences of a particular interpretation." *Sabina*, 2016 ME 141, ¶ 6, 148 A.3d 284 (quotation marks and alteration omitted). If a statute is ambiguous, meaning that it is "reasonably susceptible to multiple interpretations, we look beyond the plain language of the provision to consider other indicia of legislative intent, including the legislative history underlying its enactment." *Desjardins v. Reynolds*, 2017 ME 99, ¶ 12, 162 A.3d 228.

[¶9] Section 551 prescribes the process that must be followed by a mortgagee or—as here—an entity servicing the mortgage, *see supra* n.1, to discharge a mortgage on real property located in Maine. Through that statute,

6

the Legislature created two time-sensitive requirements. The first requires the mortgagee to record the release "[w]ithin 60 days after full performance of the conditions of the mortgage." 33 M.R.S. § 551. The second requirement, which is the one at issue here, addresses the transmittal of the now-recorded release to the mortgagor: "Within 30 days after receiving the recorded release from the registry of deeds, the mortgagee shall send the release by first class mail to the mortgagor's address as listed in the mortgage agreement or to an address specified in writing by the mortgagor for this purpose." *Id.*

[¶10] Section 551 also establishes the consequences for a mortgagee's failure to comply with either of these obligations. As to the recording requirement,

> [i]f a release is not transmitted to the registry of deeds within 60 days, the owner and any such servicer are jointly and severally liable to an aggrieved party for damages equal to exemplary damages of $200 per week after expiration of the 60 days, up to an aggregate maximum of $5,000 for all aggrieved parties or the actual loss sustained by the aggrieved party, whichever is greater.

*Id.* Then, as to the mailing requirement,

> [i]f the release is not sent by first class mail to the mortgagor[] . . . within 30 days after receiving the recorded release, the mortgagee is liable to an aggrieved party for damages equal to exemplary damages of $500.

*Id.*

[¶11] Section 551 does not identify a particular statute of limitations for a claim alleging a violation of the mailing obligation, just as the statute does not designate a limitation period for a claim alleging a violation of the recording obligation, *see infra* n.5. The statute of limitations on a civil claim requires the aggrieved party to commence an action within six years after the cause of action accrues unless another limitations period is "specially provided" by a different statute, in which case the "specially provided" period applies. 14 M.R.S. § 752. Title 14 M.R.S. § 858 is one of those statutes that "specially provide[s]" for a different limitations period:

> Actions for *any penalty or forfeiture on a penal statute*, brought by a person to whom the penalty or forfeiture is given in whole or in part, shall be commenced within one year after the commission of the offense. If no person so prosecutes, it may be recovered by civil action, indictment or information in the name and for the use of the State at any time within 2 years after the commission of the offense, and not afterwards.

(Emphasis added). The question presented here is whether Denutte's claim for "exemplary damages" would result in a "penalty . . . on a penal statute."

[¶12] Section 858 does not define "penal statute," but the meaning of the term has been a subject of occasional consideration in our case law since that

section was enacted.[4]  *See, e.g.*, *Me. Real Estate Comm'n v. Anderson*, 512 A.2d 351, 353-54 (Me. 1986) (concluding that 32 M.R.S.A. § 4056(3) (1978), *repealed by* P.L. 1987, ch. 395, § 174 (effective June 24, 1987), which provided for the suspension or revocation of a broker's license based on professional misconduct, was not penal within the meaning of section 858 because it was enacted for the "manifest purpose" of authorizing a regulatory agency to "protect the public from improper conduct on the part of real estate brokers" (quotation marks omitted)); *Hall v. Hall*, 112 Me. 234, 236-37, 91 A. 949, 950 (Me. 1914) (concluding that a statute giving "the right of action . . . to the injured party" and providing a right to recover a multiple of damages "incidental to the general right to recover" is remedial, but that a statute giving a right of action "to others than the injured party" is penal); *Beals v. Thurlow*, 63 Me. 9, 11-12

---

[4]  The predecessor to section 858 was enacted almost two hundred years ago.  P.L. 1821, ch. 62, § 14.  It was drawn from an English law, 31 Eliz. c. 5, § 5 (Eng. 1588), that limited the time to commence actions to recover a "penalty [that] is given wholly to the sovereign, and those where it is given partly to the sovereign and partly to a prosecutor or common informer."  *Mansfield v. Ward*, 16 Me. 433, 437-38 (1840).  When Maine adopted the law in 1821, a third category of claims was added to the scope of a "penal statute," namely, those in which "the penalty is limited wholly to the party or person prosecuting."  *Id.* at 438.  Section 858 has not been amended substantively since that time.  *Compare* P.L. 1821, ch. 62, § 14 *to* 14 M.R.S. § 858 (2018).

Denutte contends that the limitation period of section 858 is applicable only to statutes that provide for an award to be given to the State in addition to another prosecuting party.  This reading of section 858, however, is not supported by our caselaw.  *See Moore v. Smith*, 5 Me. 490, 495 (1829) (concluding that a statute that provides an award to be "recovered by any party interested in the estate . . . and by no other person," P.L. 1821, ch. 51, § 11, is subject to the one-year limitation period on penal statutes).

(1874) (concluding that the portion of an anti-gambling statute giving "the loser an action to recover his money or goods" is remedial, while the portion of the same statute authorizing "any person to prosecute the winner in a *qui tam* action for treble the amount of his unlawful gains, in case the loser does not, . . . is purely and distinctly penal"); *Mansfield v. Ward*, 16 Me. 433, 437-38 (1840) (holding that penal statutes include those that award a penalty to the State, award a penalty "partly to the [State] and partly to a prosecutor or common informer," and award an entire penalty to a party who "is not obliged to make any . . . proof of injury").

[¶13]  Whether a violation of the mailing obligation created by section 551 and the resulting award is a "penalty . . . on a penal statute" within the meaning of section 858—which would make a claim based on that portion of section 551 subject to the one-year statute of limitations—is a matter of statutory interpretation.  For the reasons we discuss below, the character of the mailing requirement in section 551 is not apparent from the plain language of that statute, which means that it is ambiguous.[5]  *See Desjardins*, 2017 ME 99, ¶ 12, 162 A.3d 228.

---

[5]  Because a statute can contain both remedial and penal provisions, our analysis of the mailing requirement does not necessarily extend to the recording obligation. *See People's Sav. Bank v. Chesley*, 138 Me. 353, 360, 26 A.2d 632, 635 (1942) ("A statute which is both remedial and penal is to be construed in its respective parts accordingly."); *see also Beals v. Thurlow*, 63 Me. 9, 11-12 (1874).

[¶14]  A violation of the mailing obligation created in section 551 entitles the "aggrieved party" to an award of "damages equal to exemplary damages of $500."  This language presents some features of a penalty—the recovery is in a fixed amount and is awarded to a party who need not prove any actual injury. *See Penalty*, Black's Law Dictionary (11th ed. 2019) (defined as "a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)").  There remains some lack of clarity on this point, however, because the Legislature chose not to brand the consequence for such a violation as a "penalty" as it has in other civil statutes.  *See, e.g.*, 13 M.R.S. § 1778 (2018) (imposing "a civil penalty of $500 . . . to be recovered in a civil action by the aggrieved association" for inducing a breach of contract or spreading false reports in violation of the Uniform Agricultural Cooperative Association Act); 14 M.R.S. § 8302 (2018) (providing that a person who commits retail theft is liable to the merchant for "[a] civil penalty equal to 3 times the retail price of the merchandise"); 33 M.R.S. § 657 (2018) (imposing "a penalty . . . to be recovered in a civil action" by the register of deeds for the failure to file a plan for the division of property into lots).  Instead, the Legislature has characterized the only award that may be recovered for a violation of the mailing requirement as "exemplary damages."

[¶15]  Although "exemplary damages" is a term that is synonymous with "punitive damages," *see Michaud v. City of Bangor*, 160 Me. 285, 288, 203 A.2d 687, 689 (1964) (using the terms interchangeably); *Pike v. Dilling*, 48 Me. 539, 542 (1861) (same), that statutory language is not dispositive of the issue before us.  "Exemplary damages" are commonly understood to mean a monetary award given to an injured party, in addition to an award for actual damages, for conduct that is intentional, willful, or reckless.  *See Foss v. Me. Tpk. Auth.*, 309 A.2d 339, 345 (Me. 1973) ("Exemplary, or punitive, damages are generally awarded in those cases where the conduct of the defendant is found to be deliberate, malicious or grossly negligent . . . [and] are awarded to [a] plaintiff over and above compensation for his injuries."); *see also, e.g.*, 38 M.R.S. § 99-A(2)(B) (2018) (stating that "[a] pilot providing piloting services is liable . . . for exemplary damages for intentional, willful or reckless conduct").  The exemplary damages allowed by section 551 for a violation of the mailing requirement, however, are not awarded as a supplement to an award of actual damages because section 551 does not provide for *any* award of actual damages.  Nor does the statute require proof of the violative conduct to be wanton, reckless, malicious, or, for that matter, accompanied by *any* measure of fault.  Therefore, despite the nomenclature, the availability of "exemplary

12

damages" for a violation of the mailing requirement in section 551 does not, by itself, establish whether the obligation to pay such damages is penal in nature.

[¶16]  In our previous discussions of section 858 and its predecessors, we have consistently stated that a statute is remedial—and not penal—when it provides for damages in an amount that either compensates the injured party for an actual loss, *see Beals*, 63 Me. at 11 (concluding that the portion of an anti-gambling statute that "gives the loser an action to recover his money or goods" is remedial), or is a direct function of an award for the actual damages sustained, *see Hall,* 112 Me. at 236, 91 A. at 950 (concluding that a statute is remedial when it allows the injured party to recover a multiple of actual damages); *Frohock v. Pattee*, 38 Me. 103, 105, 107-08 (1854) (concluding that a statute is remedial when it allows an injured creditor to recover double damages from a person who aids or assists in the fraudulent concealment or transfer of secured collateral); *Palmer v. York Bank*, 18 Me. 166, 172 (1841) (construing a statute that allows interest in certain actions on a debt at a rate that is quadruple the rate provided in other actions to be "certainly penal in its character.  But as it is given to the party injured" and is a multiple of actual damages, "we are not satisfied that it is to be regarded properly as a penal action").

[¶17]  In contrast, a claim arising from a violation of the mailing requirement of section 551 does not require the aggrieved party to prove actual injury or damages.  A mortgagor is entitled to a recovery based on the mere failure of the mortgagee to mail the recorded release before the statutory deadline, and the statutory recovery is not connected to the amount or even to the existence of actual damages.  Because the predicate for the statutory damages at issue here is entirely untethered from actual injury or damages, a violation of the section 551 mailing requirement is best seen as penal rather than compensatory.  *See Mansfield*, 16 Me. at 438 (stating that "a statute is to be considered penal[] when the party recovering is not obliged to make any . . . proof of injury").

[¶18]  This conclusion gains more persuasive force when the legislative history of section 551 is considered.  *See Desjardins*, 2017 ME 99, ¶ 12, 162 A.3d 228.  Although the *process* for discharging a mortgage on real property in Maine has always been governed by statute, *see* P.L. 1821, ch. 39, § 1, the Legislature did not prescribe the *consequences* for a mortgagee's failure to discharge a mortgage until the late nineteenth century.[6]  By 1930, the statutory

---

[6]  That occurred with a statute enacted in 1895, which provided that a mortgagee who "refuses or neglects for seven days after being thereto requested, and after a tender of his reasonable charges to make such discharge or to execute and acknowledge a deed of release of the mortgage, . . . shall be liable for all damages occasioned by such neglect or refusal, to be recovered in an action on the case."

14

predecessor to section 551 included a requirement that the mortgagee record the release of a mortgage, but conditioned that duty on the mortgagor's request that the mortgagee do so, and it prescribed a penalty[7] for noncompliance: "If a mortgagee . . . refuses or neglects for seven days after being thereto requested" to record the release, "he shall be *punished* by a *fine* of not less than ten dollars, nor more than fifty dollars, to be recovered in an action on the case."  R.S. ch. 104, § 31 (1930) (emphasis added).  The Legislature's characterization of the monetary award for a violation of the recording requirement as a "punish[ment]" in the form of a "fine" plainly indicates its penal character.

[¶19]  In 1999, an amendment to section 551 was proposed and ultimately enacted, *see* P.L. 1999, ch. 230, § 1, to replace the provision quoted above with the affirmative recording obligation currently in force and to supplant the imposition of a "fine" with an award of "damages equal to exemplary damages of $200 per week after expiration of the 60 days, up to an aggregate maximum of $5,000 for all aggrieved parties or the actual loss

---

P.L. 1895, ch. 69, § 28.  Four years later, that statute was amended to eliminate a mortgagee's liability for "damages" but established "a fine of not less than ten nor more than fifty dollars, to be recovered in an action on the case."  P.L. 1899, ch. 113, § 28.

[7]  The heading of that statutory section was: "Discharge of mortgages; *penalty for neglect to discharge mortgage*."  R.S. ch. 104, § 31 (1930) (emphasis added).  Although such a heading is not part of the legal provision for purposes of our statutory construction analysis, *see* 1 M.R.S. § 71(10) (2018), the statutory language that follows is consistent with that heading.  *See Cent. Me. Power, Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶ 16, 68 A.3d 1262,

sustained by the aggrieved party" in the event of a violation of the recording requirement. This means that the 1999 amendment to section 551 created two alternative types of recovery for a recording violation: "exemplary damages" of up to $5,000, and actual damages.[8] The "exemplary damages" made available in the 1999 amendment are conceptually identical to the "punish[ment]" that had been allowed by the 1930 statute because exemplary damages—just as with the "fine" allowed by that earlier version of the statute—are still recoverable in a civil action pursuant to the current statute based purely on a statutory violation and without regard to any actual injury or actual damages.

[¶20] The mailing obligation now found in section 551—including the provision that allows an award only for "damages equal to exemplary damages in the amount of $500"—was added by a 2011 amendment.[9] P.L. 2011, ch. 146,

---

[8] The legislative summary of that amendment states that the amendment "provides for a penalty equal to the greater of exemplary damages . . . or the actual damages incurred by the mortgagor." Comm. Amend. A to L.D. 1586, No. H-382, Summary (119th Legis. 1999); *see also* Office of Policy and Legal Analysis, Joint Standing and Select Committee Bill Summaries, L.D. 1586 (Aug. 1999) (summarizing P.L. 1999, ch. 230, § 1 as providing "a penalty equal to the greater of actual damages . . . or exemplary damages"). We do not treat the legislative summary's reference to a "penalty" as dispositive of the issue before us because this language appears to cast "actual damages" as a type of "penalty" in the same mold as "exemplary damages," which is not correct as a legal matter for the reasons we explain in the text.

[9] The phrase "damages equal to exemplary damages of $500" in the mailing violation part of section 551 is curious because of its internal repetitiveness. It appears, however, that the 2011 amendment drew on the existing language applicable to a recording violation, where "damages equal to" was the phrase that introduced exemplary damages *as a calculation*—"damages equal to exemplary damages of $200 per week after expiration of the 60 days, up to an aggregate maximum of $5,000 for all aggrieved parties." 33 M.R.S. § 551; *see also Currier v. Huron*, 2008 ME 19, ¶ 15, 940 A.2d 1085. In 2011, when the Legislature carried over the award of exemplary damages as the

16

§ 1. Significantly, the Legislature chose to describe that award as "exemplary damages," which is the same way it had already described the damages that are an alternative to actual damages for a violation of the recording requirement. In other words, the "exemplary damages" allowed by the 2011 amendment have no connection whatsoever to the amount of any actual damages—or even to whether there was any injury or actual damage in the first place. Thus, despite some measure of statutory ambiguity that we have noted, the genesis of the statute prescribing the mortgagor's recovery for a violation of the mailing requirement demonstrates that this aspect of the statute is penal.

[¶21] Denutte argues that section 551 is a remedial statute and not penal because the allowable damages are a statutory form of liquidated damages.[10]

---

recovery for a mailing violation, this time in the set amount of $500, it borrowed perhaps too heavily from the existing language instead of simply providing that "the mortgagee is liable to an aggrieved party for exemplary damages of $500." The repetitive language, however, does not change the meaning of the statute, which is to allow only exemplary damages.

[10] As noted above, *see supra* n.3, Denutte argued in the trial court that the mailing requirement contained in section 551 is not penal because it is regulatory.

Denutte has not renewed that assertion on appeal, but it would be unavailing in any event because even if the aspect of the statute at issue here were regulatory, that would not answer the question before us. *See Palmer v. York Bank*, 18 Me. 166, 172-73 (1841) (favorably drawing on a Massachusetts decision stating that a statute that deters other persons from violating a law can be penal). It would be difficult to find *any* statute—penal or otherwise—that is not regulatory, because the fundamental purposes of statutes are to prescribe or prohibit certain forms of conduct. This is true even with respect to statutes that are plainly penal, such as those in the Criminal Code. *See James v. W. Bath*, 437 A.2d 863, 865 (Me. 1981) (stating that "a person whose activities are regulated with the imposition of criminal penalties for failure to comply has standing to challenge such regulation"); *see also* Me. Const. art. IV, pt. 3, § 1 ("The Legislature . . . shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant

This characterization of the damages authorized by the statute is unpersuasive for two reasons.

[¶22]   First, the Legislature has demonstrated its ability to frame damages as "liquidated damages" where it wants to.  *See, e.g.*, 10 M.R.S. § 1477(3) (2018) (stating that a car dealer that violates the used car information chapter of the Uniform Trade Practices Act is liable to the purchaser for certain liquidated damages); 26 M.R.S. § 670 (2018) (allowing an employee to recover "an additional amount equal to [the amount of unpaid minimum wages] as liquidated damages").  The Legislature did not do so here, however, signaling its intention that the damages available pursuant to section 551 are not liquidated damages.  *See State v. Diecidue*, 2007 ME 137, ¶ 14, 931 A.2d 1077 ("The Legislature could have required registrants to 'register' when verifying or updating their information, as it requires under [another section] . . . , but it did not do so."); *Eagle Rental, Inc. v. City of Waterville*, 632 A.2d 130, 131 (Me. 1993).

---

to this Constitution, nor to that of the United States."); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1730 (2019) (Gorsuch, J., concurring in part and dissenting in part) ("History shows that governments sometimes seek to regulate our lives finely, acutely, thoroughly, and exhaustively. . . . [C]riminal laws have grown so exuberantly and come to cover so much previously innocent conduct that almost anyone can be arrested for something.").  Therefore, a regulatory statute may also be penal.  *See United States v. Dotterweich*, 320 U.S. 277, 280-81 (1943) (stating that the prosecution for violations of the Federal Food, Drug, and Cosmetic Act "is based on a now familiar type of legislation whereby penalties serve as effective means of regulation.").

18

[¶23] Second, and more fundamentally, liquidated damages are awarded as a way to compensate an injured party for actual damages suffered. Liquidated damages are most closely associated with claims for breach of contract, which is not the basis for Denutte's claim here. *See Raisin Mem'l Tr. v. Casey*, 2008 ME 63, ¶ 16, 945 A.2d 1211; *see also Damages*, Black's Law Dictionary (11th ed. 2019) (defining liquidated damages as "[a]n amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches").  Nonetheless, for a contractual provision allowing liquidated damages to be enforceable, the actual damages must be difficult to determine, and the amount of liquidated damages must be a reasonable approximation of the loss caused by the breach. *Sisters of Charity Health Sys., Inc. v. Farrago*, 2011 ME 62, ¶ 13, 21 A.3d 110.  These criteria demonstrate that liquidated damages are awarded to compensate a party that has suffered an actual injury and are therefore remedial in nature.  As we have discussed, however, an award for a violation of the mailing requirement is not compensatory in any way.

[¶24]  For these reasons, Denutte's attempt to characterize the damages award for a violation of the mailing requirement as liquidated damages is unavailing.

## III. CONCLUSION

[¶25]  Because the Legislature intended the award of "damages equal to exemplary damages of $500" to be a penalty for a mortgagee's violation of the mailing obligation provided in section 551, that portion of the statute is a "penal statute" within the meaning of 14 M.R.S. § 858.  Consequently, Denutte's claim is subject to the one-year statute of limitations, and the court correctly dismissed the complaint because it was filed more than four years after the claim accrued.

The entry is:

Judgment affirmed.

---

Meredith C. Eilers, Esq. (orally), Michael R. Bosse, Esq., and Daniel J. Mitchell, Esq., Bernstien Shur, Portland, for appellant Pamela A. Denutte

Robert M. Brochin, Esq. (orally), Morgan, Lewis & Bockius LLP, Miami, Florida, and Jeff Goldman, Esq., Morgan, Lewis & Bockius LLP, Boston, Massachusetts, for appellee U.S. Bank, N.A.

Business and Consumer Docket docket number CV-2017-62
FOR CLERK REFERENCE ONLY