STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET No. AP-19-33

FAIR ELECTIONS PORTLAND,      )
INC., and TEN VOTERS OF THE    )
CITY OF PORTLAND               )
                               )
                Plaintiffs,    )   ORDER ON PLAINTIFFS' RULE 80B
                               )   APPEAL and DEFENDANT'S MOTION TO
        v.                     )   DISMISS
                               )
THE CITY OF PORTLAND           )
                               )
                Defendant.     )        REC'D CUMB CLERKS OF
                               )        MAY 13 '20 PM2:43

On September 20, 2019, Plaintiffs Fair Elections Portland, Inc., and Ten Voters of

the City of Portland filed a complaint against Defendant the City of Portland (the "City")

disputing the City Council's failure to submit a proposed citizen-initiated charter

amendment to voters. Before the court is Plaintiffs' Rule 80B Appeal and the City's

Motion to Dismiss Plaintiffs' independent claims for relief.

For the following reasons, Plaintiffs' Rule 80B appeal is denied, and the City's

Motion to Dismiss is granted in part.

## I. Background

On April 2, 2019, Fair Elections Portland filed an affidavit with the city clerk

seeking to circulate a proposed citizen-initiated charter *amendment* (the "Petition"). (R.

40; Pl.s' Am. Compl. ¶ 30) (emphasis supplied). The Petition provides for public funding

in municipal campaign elections, and, if approved, would appear in the City Charter as

follows:

> The city council shall establish and fund a mechanism providing public campaign
> funds to qualified candidates for mayor, city council, and school board. The
> mechanisms must provide sufficient funds to allow candidates who meet

For Plaintiff:
John Brautigam, Esq. & Benjamin Gaines, Esq.

For Defendant:
Jennifer Thompson, Esq. & Danielle West-Chuhta, Esq.

qualifying criteria to conduct competitive campaigns, must be voluntary, must limit the amount of private funds a candidate may raise, must only be available to candidates who demonstrate public support, and must be limited to candidates who enter into a binding agreement not to accept private contributions other than those allowed by the public funding program. The mechanism must be available by the 2021 municipal election.

(R. 40; *see* Portland City Charter, R. 1-37.)

As originally submitted to the City, the petition form contained the so-called "Optional Language." (R. 40.) This "Optional Language" authorizes municipal officers to treat a proposed charter amendment as a request for a charter commission in the event the City Council determines that the proposed charter amendment constitutes a "revision" of the charter. 30-A M.R.S. § 2104(4) (2019). Upon making this determination, rather than submit the proposed amendment directly to voters, the City Council is required to put on the ballot, "Shall a Charter Commission be established for the purpose of revising the Municipal Charter?"[1] *Id.*

The original petition forms issued by the City, circulated and signed by the voters included the "Optional Language." (R. 42; Pl.s' Am. Compl. ¶¶ 33-34.) Part way through the signature process, however, the "Optional Language" was omitted from the petition forms.[2] Although volunteers for Plaintiff Fair Elections Portland noticed the error, they apparently took no action and continued gathering signatures. (R. 137; Pl.s' Am. Compl. ¶¶ 33-34.) Plaintiffs assert that they never considered that the Optional Language would come into play. (Pl.s' Am. Compl. ¶ 32.)

---

[1] "Within 30 days after . . . the receipt of a certificate or final determination of sufficiency under subsection 4, the municipal officers shall by order submit the question for the establishment of a charter commission to the voters at the next regular or special municipal election held at least 90 days after this order" and read "Shall a Charter Commission be established for the purpose of revising the Municipal Charter?" § 2102(5)(A).

[2] The omission of the "Optional Language" was due to an inadvertent error by the City's clerk's office.

On August 2, 2019, Plaintiffs delivered to the city clerk 250 notarized petition forms containing 8,506 signatures, 6,816 of which were certified as valid. (R. 111; Pl.s' Am. Compl. ¶¶ 3, 36.) On August 12, 2019, the city clerk certified the sufficiency of the petitions as satisfying the procedural requirements contained in section 2104.[3] (R. 111; Pl.s' Am. Compl. ¶ 37.) Pursuant to section 2104(5)(A), the City scheduled a public hearing on the matter, and added the Petition to the City Council's agenda as Order 42-19/20.[4] (R. 82, 91, 95.)

Prior to the City Council's meeting, Corporation Counsel reviewed the proposed amendment and advised the City Council that the mandatory public funding aspect of the Petition represents a charter "revision" rather than an "amendment" and "is the type of fundamental change that a Charter Commission must review." (R. 112-13.) On August 30, 2019, Plaintiffs submitted their own attorney's opinion letter disputing Corporation Counsel's findings, insisting that the City Council has a non-discretionary duty to submit the Petition directly to voters, as written.[5] (R. 114-21; Pl.s' Br. 8.)

On September 4, 2019, the City Council took up Order 42/19-20 and heard public comments on the matter. (R. 129-46.) After debating the significance of the Petition and the effect of the omitted Optional Language, the City Council postponed a final vote on the matter. (R. 147-51, 153-201.) Corporation Counsel then circulated a second memorandum suggesting that the City Council was "not bound or required" to submit

_____

[3] A certified petition confirms that: (1) the written petition was signed by voters equal to at least 20% of the number of votes cast in the municipality at the last gubernatorial election; and (2) the amendment was limited to a single subject. 30-A M.R.S. § 2104(2)-(3).
[4] Within ten days after a petition is certified as sufficient, the municipal officers must hold a public hearing on the proposed amendment. *Id.* § 2104(5)(A).
[5] Within seven days after the public hearing, the municipal officers must have on file a written opinion by an attorney admitted to the Maine Bar stating that the proposed amendment does not contain any provision "prohibited by the general laws, the United States Constitution or the Constitution of Maine." *Id.* § 2104(5)(B).

the Petition to voters under section 2104 as an amendment, or treat it as a request for a charter commission and follow the procedures set forth in section 2102.[6] (R. 222-23.)

Accordingly, on September 16, 2019, the City Council voted (6-2) not to submit the Petition to voters as a charter amendment. (R. 251-60.) They also voted (5-3) not to treat the Petition, which failed to comply fully with the Optional Language requirement, as a request for a charter commission. (R. 240-49, 257-58.) Ultimately, the City Council voted to indefinitely postpone Order 42-19/20, effectively terminating the Petition. (R. 260, 266.)

On September 20, 2019, Plaintiffs filed their original complaint in this matter, and subsequently, their Amended Complaint on October 4, 2019. The Amended Complaint contains four counts: (Count I) a Rule 80B appeal; (Count II) a claim for declaratory judgment pursuant to Section 2108(2) and the Declaratory Judgment Act; (Count III) a civil action under 42 U.S.C. § 1983 for a deprivation of rights under the Home Rule Act and the Maine Constitution; and (Count IV) a civil action under 42 U.S.C. § 1983 for a deprivation of rights under the Home Rule Act and the Federal Constitution. (Pl.s' Am. Compl. ¶¶ 61-87.) Plaintiffs also unsuccessfully sought a preliminary injunction mandating that the City submit the Petition to voters in time for the November 5, 2019 election.

On October 21, 2019, after a conference on Plaintiffs' Motion for Preliminary Injunction, the City Council voted (7-1) to utilize its own authority and submit to ballot

---

[6] Corporation Counsel may have erroneously suggested that the Petition lacked the required attorney sufficiency letter. (R. 223, 228-29.) Plaintiffs' August 30, 2019, memorandum opined that the Petition does not "contain any provision prohibited by the general laws, the United States Constitution or the Constitution of Maine" and to "[p]lease accept this document for purposes of satisfying the requirements of §2104(5)B) . . . ." (R. 115.)

the question, "Shall a Charter Commission be established for the purpose of revising the Municipal Charter?"[7] (R. 340-67, 398; 30-A M.R.S. § 2102(1).) On February 6, 2020, the court heard oral argument on the City's Motion to Dismiss and took the matter under advisement. In the interest of expediency, the court issued a briefing schedule on the merits of Plaintiffs' Rule 80B appeal.

## II. Discussion

### A. Dismissal of Plaintiffs' Independent Claims for Relief

As a threshold matter, the court must address Plaintiffs' independent claims for relief. The City avers that (1) Plaintiffs claims are not ripe for review; (2) that Plaintiffs lack standing to seek a declaratory judgment under Count II; (3) that even if Plaintiffs do have standing, the claims are now moot as a result of the City's action submitting a charter commission question to voters; and (4) that Counts III and IV are barred by the availability of relief under Rule 80B. (Mot. Dismiss 7-11.) Prior to addressing the merits of the Rule 80B appeal, the court concludes that Plaintiffs' independent claims are dismissed as duplicative.

When a Rule 80B appeal is combined with more counts alleging independent causes of action, the court is called upon to act both as an appellate court and as a trial court. *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 14, 743 A.2d 237; M.R. Civ. P. 80B(i). Count II seeks a declaratory judgment, under Section 2108(2), that the City's refusal to send the Petition directly to voters as an amendment violated the Home Rule Act. (Pl.s' Am. Compl. ¶ 70; *see* Mot. Dismiss 11-12, 16.)

---

[7] The City Council voted to submit the charter commission question to voters at the next municipal election, scheduled for June 9, 2020. Due to COVID-19, the election has since been postponed to July 14, 2020.

"When direct review is available pursuant to Rule 80B, it provides the exclusive process for judicial review unless it is inadequate." *Gorham v. Androscoggin Cnty.*, 2011 ME 63, ¶ 22, 21 A.3d 115. "Resort to the courts by alternate routes will not be tolerated, subject only to an exception for those circumstances in which the course of 'direct appeal' review by a court is inadequate and court action restricting a party to Rule 80B review will cause that party irreparable injury." *Cayer v. Town of Madawaska*, 2016 ME 143, ¶ 16, 148 A.3d 115 (citation omitted). Review is inadequate "when an alleged deprivation of civil rights occurs before, and not as part of, the action or inaction for which a plaintiff seeks review." *Id.*

Plaintiffs' request for declaratory judgment mirrors the Rule 80B appeal. Both seek a declaration that the City must order that the Petition appear on the next municipal election as a charter amendment. (Pl.s' Am. Compl. ¶¶ 65, 70.) Because Count II "relies on the same factual allegations, and seeks the same relief as the Rule 80B appeal," the court declines to enter declaratory relief, and dismisses Count II as duplicative. *Cape Shore House Owners Ass'n v. Town of Cape Elizabeth*, 2019 ME 86, ¶ 9, 209 A.3d 102.

Similarly, Plaintiffs' 1983 claims (Counts III and IV) rely on the same factual allegations and seek the same relief as the Rule 80B appeal. (Pl.s' Am. Comp. ¶¶ 77, 79, 85, 87.) Because these claims require the court to engage in the same legal and factual analysis necessary to decide the Rule 80B appeal, Counts III and IV are also dismissed as duplicative.[8] *Kane v. Comm'r of the Health & Human Serv.*, 2008 ME 185, ¶¶ 31-32, 960 A.2d 1196 (dismissing 1983 claim as duplicative of Rule 80C appeal).

---

[8] Although Rule 80B does not award Plaintiffs' attorney's fees, which may have been available under Plaintiffs' 1983 claims, that does not mean Rule 80B is inadequate. *See Gregory v. Town of Pittsfield*, 479 A.2d 1304, 1308 n.8 (Me. 1984).

Whether the City had the authority to act as so-called "gatekeepers" and make a threshold determination that the proposed amendment actually constituted a revision, and whether the City impermissibly classified the Petition as a charter revision may be adequately addressed in the Rule 80B appeal.

### B. *Rule 80B Standing*

At the outset, the City asks the court to address its contention that Plaintiffs lack standing to pursue a Rule 80B appeal. (Def.'s Br. 7, 13; Mot. Dismiss 13-14.)

The Superior Court's jurisdiction to hear a Rule 80B appeal is a function of statute. *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 13, 879 A.2d 1007. Rule 80B authorizes review of a government agency's "failure or refusal to act" and is available if it "is provided by statute or is otherwise available by law." M.R. Civ. P. 80B(a). Rule 80B "does not create an independent right to appeal any governmental action to the Superior Court, but only provides the procedure to be followed for those disputes in which the court has jurisdiction." *Your Home, Inc. v. City of Portland*, 505 A.2d 488, 489 (Me. 1986).

Section 2108 gives this court jurisdiction to enforce the Home Rule Act, providing that "[t]he Superior Court, upon petition of 10 voters of the municipality or on petition of the Attorney General, may enforce this chapter . . . ." 30-A M.R.S. § 2108(1). Plaintiff Fair Elections Portland, therefore, brought this action along with "Ten Voters of the City of Portland," seeking Rule 80B review of the City's alleged failure to comply with the Home Rule Act.

The City contends that standing is expressly limited by section 2108. (Mot. Dismiss 13-14.) Section 2108(3), "Judicial Review," provides citizens with standing to challenge the "procedures under which a charter was adopted, revised, modified or

amended" within thirty days after the election approving the change.[9] 30-A M.R.S. § 2108(3). Thus, judicial review pursuant to section 2108(3) is not ripe until after a charter has been "adopted, revised, modified or amended." *Id.* Separately, section 2108(2) entitled "Declaratory Judgment" affords citizens the right to seek a declaration of their rights:

> A petition for declaratory relief under [the Declaratory Judgment Act] may be brought on behalf of the public by the Attorney General or, by leave of the court, by 10 voters of the municipality. The charter commission shall be served with notice of the petition for declaratory judgment.

*Id.* § 2108(2). The fact that a charter commission must be served with notice suggests that a petition for declaratory relief – like a petition for judicial review under section 2108(3) – is not ripe until after a charter commission has acted and is based on an approved charter change.[10]

Nonetheless, section 2108 does confer standing to "10 voters of the municipality" who lack injury. *See Ten Voters of the City of Biddeford v. City of Biddeford,* 2003 ME 59, ¶ 6, 822 A.2d 1196 ("Section 2108 provides a means for any ten voters to challenge an ordinance adopted by a charter commission *in the absence of injury* . . . .") (emphasis added).

---

[9] Section 2108(3) provides:
> Any ten voters of the municipality, by petition, may obtain judicial review to determine the validity of the procedures under which a charter was adopted, revised, modified or amendment. The petition must be brought within 30 days after the election at which the charter, revision, modification or amendment is approved . . . No charter adoption, revision, modification or amendment may be found invalid because of any procedural error or omission unless it is shown that the error or omission materially and substantially affected the adoption, revision, modification or amendment.

[10] There is also no evidence Plaintiffs served the Attorney General with a petition for declaratory judgment, as required by Section 2108(2)(A).

The court finds that Plaintiffs have standing and conclude that standing to pursue this appeal is not conditioned on properly invoking sections 2108(2) or 2108(3).[11] *See Karytko v. Town of Kennebunk*, No. AP-06-24, 2006 Me. Super. LEXIS 209 (Oct. 10, 2006) (permitting a Rule 80B appeal in similar circumstances).

### C. Merits of Plaintiffs' Rule 80B Appeal

The court, in its intermediate appellate capacity, reviews the City Council's action directly for "errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Priestly v. Town of Hermon*, 2003 ME 9, ¶ 6, 814 A.2d 995. The court must first determine whether the City Council has the authority under the Home Rule Act to act as "gatekeepers," and if so, whether the City Council's finding that the Petition constituted a revision was supported by substantial evidence in the record. This is a mixed question of law and fact. The court reviews the City's interpretation of the Home Rule Act de novo. *Paul v. Town of Liberty*, 2016 ME 173, ¶ 19, 151 A.3d 924.

### i. City Council's Authority Under 30-A M.R.S. § 2104

There can be no doubt that municipal citizens have a constitutional right to alter or amend their municipal charter. *See* Me. Const. art. VIII, pt. 2, § 1. As previously stated, the Home Rule Act provides two methods by which citizens can achieve this objective.

---

[11] Dismissal is also not warranted on the grounds that Plaintiffs failed to individually name the "Ten Voters of the City of Portland" pursuant to M.R. Civ. P. 10(a). (Mot. Dismiss 13-14.) Plaintiffs' original complaint identified the ten voters by name. (Pl.s' Compl. ¶ 13; *see Lund ex rel. Wilbur v. Pratt*, 308 A.2d 554, 557 (Me. 1973) (the "rights of the parties to relief cannot be made to depend on what may appear in the caption of the case")). Furthermore, to the extent the City continues to argue that Plaintiffs' Rule 80B appeal is now moot, the court must assess the legal distinction between a charter revision and an amendment, and review the City's reasons for classifying the Petition as a charter revision. If the City impermissibly branded the Petition as a charter revision, then the City's action submitting a charter commission question to ballot does not remedy the alleged violation. *See* 30-A M.R.S. § 2104(5).

Section 2104 controls charter amendments and section 2102 governs charter revisions. *See* 30-A M.R.S. §§ 2102, 2104.[12]

Plaintiffs argue correctly that section 2104 imposes a non-discretionary duty upon municipal officers to order that a certified citizen-initiated charter *amendment* appear on the ballot, as written. (Pl.s' Br. 9; 30-A M.R.S. § 2104(5)(C).) The court finds persuasive, however, the City's position that municipal officers are tasked with a "gatekeeper" function, meaning the City Council is not required to submit a certified petition without first making a threshold determination that the proposed amendment does not, in fact, constitute a revision of the charter. (Def.'s Br. 20; Mot. Dismiss 16.)

The court looks "to the plain language of the statutory provision at issue to determine its meaning, and . . . interpret[s] [statutory] provisions according to their unambiguous meaning unless the result is illogical or absurd." *Sabina v. JP Morgan Chase Bank, N.A.*, 2016 ME 141, ¶ 6, 148 A.3d 284 (internal quotation marks omitted) (citation omitted). The court considers the "statute's subject matter and purposes . . . and the consequences of a particular interpretation." "Only if the statute is ambiguous will [the court] look to extrinsic indicia of legislative intent such as relevant legislative history." *Id.* (quotation marks and citation omitted).

The legislature enacted section 2104(4), in part, to remedy an apparent inequity whereby municipal officers would block access to the ballot by relying on its own

---

[12] The fundamental difference is that a proposed charter amendment does not require the establishment of a charter commission, and upon receipt of a proposed *amendment* that satisfied the procedural requirements of section 2104, municipal officers must, by order, submit the amendment directly to voters, as written. 30-A M.R.S. § 2104(2)-(3),(5)(C). Conversely, upon receipt of a petition seeking to revise the municipal charter, the proposed charter revision is not sent directly to the voters. Instead, the question appearing on the ballot is "Shall a Charter commission be established for the purposes of revising the Municipal Charter?" 30-A M.R.S. § 2102(2),(5)(A).

attorney's opinion classifying a proposed amendment as charter revision. *See* L.D. 2010, Statement of Fact (110th Legis. 1982). Section 2104(4) therefore authorizes an alternative outcome:

> **Amendment Constituting Revision.** At the request of the petitioners' committee, the petition form shall also contain the following language:
>
>> "each of the undersigned voters further requests that if the municipal officers determine that the amendment set out below would, if adopted, constitute a revision of the charter, then this petition shall be treated as a request for a charter commission."
>
> Upon receipt of a petition containing this language, the municipal officers, if they determine with the advice of an attorney that the proposed amendment would constitute a revision of the charter, shall treat the petition as a request for a charter commission and follow the procedures applicable to such a request.

30-A M.R.S. § 2104(4). Because not all the petitions circulated and signed by the voters contained the Optional Language authorizing this alternative, the City Council properly concluded that it lacked the statutory authority to convert the Petition to a request for a charter commission.[13] (R. 240-43, 247-50.)

Regarding the City's authority to inquire into the substance of the Petition, however, Plaintiffs aver that the City Council's authority to do so is conditioned upon receipt of signed petitions that contain the Optional Language. (R. 42-43; Pl.s' Br. 1; Pl.s' Reply Br. 4-9.) Such an interpretation contravenes the Home Rule Act's purposeful distinction between charter amendments and charter revisions, as it would effectively circumvent the requirement that a charter commission must be established prior to submitting a purported revision to voters. *See* 30-A M.R.S. 2102(2)-(3),(5)(A). The court

---

[13] Plaintiffs also concluded, and advised the City, that it lacked the authority to convert Petition to a request for a charter commission. (Pl.s' Br. 13.) Furthermore, the City does not dispute the fact that, had the Optional Language been included in the signed petition forms, as Plaintiffs originally intended, it would have been obligated to treat the Petition as a request for a charter commission.

statutes and regulations governing the licensing of eating establishments. A TRO is the only remedy that will effectively protect the public.

The Department is likely to succeed on the merits. Defendant was and is obligated to either cease operations or to close the restaurant to dine-in service in response to the Department's May 1, 2020 IHH. 10-144 C.M.R., Ch. 202, §6(F). The Department issued a temporary suspension of Defendant's license in accordance with 5 M.R.S. § 1004(3) on May 1, 2020, based on the Defendant's refusal to correct hazardous conditions, thereby placing the health of its staff and patrons in immediate jeopardy such that pursuing an emergency suspension via court action would be to ignore the known risk of further spread of COVID-19. The Defendant is prohibited by law from operating an eating establishment without a license to do so. 22 M.R.S. § 2492(1)(A), (2)(A). The Defendant's license has remained suspended since May 1, 2020. Accordingly, the law is clear – the Defendant is not permitted to operate an eating establishment.

The public interest will not be adversely affected by granting the Plaintiffs' request for a TRO. On the contrary, immediate injunctive relief is necessary to protect the health and safety of the public. The public interest will be served by enforcement of the provisions of Maine law that are designed to protect the public from eating establishments that do not comply with health and safety standards.

## Certification of Efforts to Provide Notice

Undersigned counsel certifies that the following efforts have been made to effect notice to the Defendant:

1. A copy of the Complaint, as well as this motion and Department's Motion for Expedited Scheduling Pursuant to PMO-SJC-1, have this date been emailed to Defendant at its last

8

cannot reasonably interpret the Home Rule Act to authorize an outcome that permits citizens to vote directly on a charter revision, simply by submitting it under section 2104 as a charter amendment and omitting the Optional Language.[14]

Accordingly, the court finds and concludes that the City Council did not err in its interpretation of the Home Rule Act by declining to submit the Petition directly to voters as an amendment after concluding that the Petition constituted a charter revision.

### ii. Substantial Evidence

Review of the City Council's finding that the Petition constituted a charter revision is a fact based inquiry that must be supported by substantial evidence in the record. For purposes of Rule 80B review, "substantial evidence" is "evidence that a reasonable mind would accept as sufficient to support a conclusion." *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368 (citation omitted). Plaintiffs have the burden of establishing that the evidence compels a contrary conclusion. *Tompkins v. City of Presque Isle*, 571 A.2d 235, 236 (Me. 1990). The court may not substitute its judgment for that of the City Council's and "the fact that the record contains inconsistent evidence or inconsistent conclusions could be drawn from the evidence does not invalidate the [City Council's] holding." *Boivin v. Sanford*, 588 A.2d 1197, 1199 (Me. 1991); *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 6, 868 A.2d 230.

The Law Court has not had occasion to determine when a modification constitutes a revision or an amendment. This court, however, has stated that a revision "destroy[s] or materially alter[s] the fundamental aspects of the Town's form of government."

---

[14] Additionally, the City's action on October 21, 2019 submitting a charter commission question to the next municipal election is precisely the result that would have been available to Plaintiffs had the Optional Language not been omitted from the signed petition forms, as Plaintiffs intended. *See* 30-A M.R.S. § 2102(5).

*Ruppert v. Inhabitants of the Town of York,* No. CV-95-634, 1996 Me. Super. LEXIS 247, at *6 (July 30, 1996) (citing *Albert v. City of Laconia,* 134 N.H. 335, 592 A.2d 1147, 1149 (N.H. 1991). This court has similarly affirmed a town's determination that a proposed amendment constituted a revision because it "substantially altere[d]" the budget process. *Karytko v. Town of Kennebunk,* No. AP-06-24, 2006 Me. Super. LEXIS 209, at *7 (Oct. 10, 2006).

Based on the record before it, the court finds that Corporation Counsel adequately advised the City Council of the legal distinction between charter amendments and revisions:

> "There are very few Maine cases addressing the distinction between an amendment and a revision, but the general difference between the two concepts is that a revision involves a fundamental change in the form of government, while an amendment is merely a change or correction of a detail in the charter." [Maine Municipal Association] Charter Resource Packet at p. 1 .... Courts in other states with similar statutory schemes have also held that an amendment "only amends, alters, or improves within the lines of the original charter," while a revision "totally disrupts, cancels, abrogates or makes inoperable the original charter." Midland v. Arbury, 30 Mich. App. 771 (1972) (finding a provision making city manager subject to voter recall a revision).

(R. 112-113.) Corporation Counsel advised the City Council about the mandatory funding aspect of the Petition and its effect on the powers and function of government vested to the City Council and City Manager under the City's Charter:

> [I]t is clear that it intends to remove the Council's authority to control all "fiscal, prudential, and municipal affairs of the City of Portland" with regard to public campaign financing issues (see Article I, section 2); substantially disrupts the Council's general powers and authority to determine what is in the best interests of the city and its residents by removing the Council's ability to determine whether or not it would like to create and fund such a program each year ....

(R. 113.) As Corporation Counsel stated, "It wasn't about the amount. It was about tying the hands [of] Council [by] requiring the funding."[15] (R. 255.)

After a careful review of the record, the court is hard pressed to find sufficient evidence to overturn the City Council's determination. The City Council considered contradictory testimony and evidence, yet ultimately concluded that the Petition's mandatory funding aspect substantially "disrupts" the City Charter by removing the City Council's control over the "administration of all fiscal, prudential, and municipal affairs of the city."[16] (R. 2, 162-66, 225-28, 239-48, 251-60.)

While the court acknowledges that Plaintiffs have sacrificed considerable time and effort in this matter, the relevant provisions of the Home Rule act and the deferential standard of review on appeal, require the court to uphold the actions taken by the City.

## III. Conclusion

For the foregoing reasons, Plaintiffs' Rule 80B Appeal is DENIED. The court GRANTS the City's Motion to Dismiss in part, and dismisses Counts II, III, and IV of Plaintiffs' Amended Complaint.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

---

[15] Corporation Counsel opined in an email to Councilors that "a revision changes the shape and dimensions of the original charter, creating new structural elements that did not before exist, or eliminating features that were fundamental to the function of the municipal government. This (in my mind) is similar to the public campaign financing proposal since it is changing the function of the City Council in relation to the budget process . . . ." (R. 123.)

[16] The City also contends that it adopted a "Town Manager" form of government, and that the Petition would disrupt the City Manager's vested authority to manage day-to-day operations and advise the City Council on funding and budgetary matters. (Def.'s Br. 16-17.)

Dated: 5/13/2020

Mary Gay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 5|18|2020